ORIGINAL

FILED

08 JUN -2 PM 12: 38

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: ____ECL____  DEPUTY

1   Michael D. Braun (167416)
    BRAUN LAW GROUP, P.C.
2   12400 Wilshire Blvd., Suite 920
    Los Angeles, CA 90025
3   Tel:    (310) 442-7755
    Fax:    (310) 442-7756
4   E-mail: service@braunlawgroup.com

5   Roy A. Katriel (*pro hac vice* application to be filed)
    THE KATRIEL LAW FIRM, PLLC
6   1101 30TH Street, NW Suite 500
    Washington, DC 20007
7   Tel:    (202) 625-4342
    Fax:    (202) 330-5593
8   E-mail: rak@katriellaw.com

9   *Counsel for Plaintiff*

10

11                  UNITED STATES DISTRICT COURT

12                SOUTHERN DISTRICT OF CALIFORNIA

13

14  JPA FURNITURE INC., ON BEHALF OF )   CASE NO. 08 CV 0978 BEN BLM
    ITSELF AND ALL OTHERS SIMILARLY )
15  SITUATED,                        )   CLASS ACTION
                                     )
16                  Plaintiff,       )   COMPLAINT
                                     )
17         v.                        )   JURY TRIAL DEMANDED
                                     )
18  GLOBAL CHECK SVC.,               )
                                     )
19                  Defendant.       )
    ─────────────────────────────────)

20

21

22

23

24

25

26

27

28

                                              CASE NO.:

CR

## NATURE OF THE ACTION

1.     Plaintiff JPA Furniture Inc. ("plaintiff" or "JPA Furniture") brings this action individually and on behalf of all others similarly situated, to seek redress for defendant Global Check Svc.'s ("defendant" or "Global Check") violations of: the California Unfair Competition Law, Section 17200 of the California Business and Professions Code; the California Consumer Legal Remedies Act, Section 1750 *et. seq.* of the California Civil Code; the common law of unjust enrichment, as well as to seek redress for defendant's breach of contract. Plaintiff operates a number of furniture stores known by their business trade name as "The 99 Dollar Furniture Store." As part of its business operations, plaintiff entered into a contract with defendant pursuant to which defendant was to provide plaintiff with Accounts Receivable Conversion and Check Guarantee services. Pursuant to the terms of this standard contract, plaintiff was to pay Global Check a pre-set fee for each check processing transaction, and was also subject to a minimum charge during the term of the contract. Despite this agreement, during the term of the contract, Global Check sent plaintiff and similarly situated customers of defendant a letter in which Global Check informed its customers that it had unilaterally imposed a change of terms to the contract, including, but not limited to, an increase in the processing fees that it would charge per transaction. When JPA Furniture complained and attempted to exit the contract (now that its terms had been unilaterally altered by defendant), Global Check informed JPA that it would still be liable for the minimum fees under the contract, regardless of whether Global Check had changed the contractual terms to which the parties had agreed. Global Check also indicated that any cancellation by JPA Furniture would result in a cancellation penalty being imposed. Any and all attempts by JPA Furniture to either restore the contract to the actually agreed-upon terms or to cancel the contract were soundly rebuffed by Global Check. Because the foregoing represents a standard form contract drafted by defendant as well as a standard form of practice by Global Check against customers similarly situated to JPA Furniture, plaintiff brings this action as a class action to seek redress on behalf of itself and all others similarly situated.

1

CASE NO.:

## PARTIES

2.      Plaintiff JPA Furniture Inc. is a corporation organized under the laws of the State of Arizona, and having its principal place of business at 1860 W. Broadway Road, in Mesa, Arizona 85202. Plaintiff operates a number of furniture and accessory stores in Arizona. As part of its business operations, on or about June 2006, plaintiff entered into a contract with defendant Global Check, pursuant to which Global Check was to provide Accounts Receivable Conversion and check guarantee services for plaintiff. A copy of this standard language contract that was drafted by Global Check is attached hereto as Exhibit 1 to this complaint.

3.      Defendant Global Check Svc. is, upon information and belief, a corporation organized under the laws of the State of California, and having its principal place of business at 266 S. Magnolia Avenue, Suite 201 in El Cajon, California 92020. Global Check is engaged in the business of, *inter alia*, providing account receivable conversion and check guarantee services to retailers and other merchants. Global Check touts itself as being the "leader in the Check Protection Industry" and as "servic[ing] thousands of quality reputable businesses throughout the U.S. and Canada." On or about June 2006, Global Check entered into a contract with JPA Furniture to provide accounts receivable conversion and check guarantee services to plaintiff. After the parties executed and had performed under the terms of the contract, Global Check sent plaintiff and, upon information and belief, similarly situated merchants, a notice indicating that Global Check had unilaterally implemented changes to the parties' agreement, including the fees that would be charged by Global Check and the procedures that plaintiff would be required to follow to obtain Global Check's services.

## JURISDICTION AND VENUE

4.      This Court has personal jurisdiction over defendant, as defendant is located and has its principal place of business within this judicial district. Further, this Court has personal jurisdiction over both parties because both have agreed to a forum selection clause submitting themselves to the jurisdiction of this Court to resolve any legal disputes arising out of their agreement. Venue is similarly proper in this Court because: defendant is located within this judicial

2

1    district: it transacts business within this judicial district; and, all acts complained of arose and were

2    directed from within this judicial district.

3        5.    Counts I-IV of the Complaint allege claims for violations of the California Unfair

4    Competition Law, California's Civil Remedies Act, breach of contract, and the common law of

5    unjust enrichment, respectively, and all seek to represent a national class of customers of defendant

6    Global Check on whom, during the Class Period defined herein, defendant unilaterally imposed a

7    change of terms to their contractual agreement while these putative class members were parties to a

8    contract with defendant.  As such, this Court has subject-matter jurisdiction over this class action

9    complaint pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. Section 1332(d) (as

10   amended 2005).

11                    **THE SERVICES OFFERED BY DEFENDANT**

12       6.    Defendant provides Accounts Receivable Conversion ("ARC") and check

13   guarantee services to contracting merchants.  As more fully described below, these services cater to

14   retailers that accept check payments from their customers by, *inter alia*, allowing the customer to

15   spread their check payment for the purchased merchandise over a number of payments, while also,

16   under certain circumstances, guaranteeing to the merchant payment for the check purchase.  In

17   return for its services, Global Check charges the merchant a "per transaction" fee, as well as a

18   minimum or monthly fees during the term of Global Check's contract with the merchant.

19       7.    Global Check's ARC and check guarantee programs essentially function like a

20   payment plan that is offered to allow customers of the contracting merchants to purchase

21   merchandise over a period of time.  The check guarantee portion of defendant's program, moreover,

22   serves to ensure that, assuming certain circumstances are met, defendant will guarantee payment to

23   the merchant for the amount of the original transaction, should the customer's checks subsequently

24   be dishonored.

25       8.    According to Global Check's sales brochure, a pertinent portion of which is attached

26   hereto as Exhibit 2, its Accounts Receivable Conversion services work by: allowing a merchant's

27   customer to purchase an item of merchandise; pay by check; take possession of the merchandise

28   upon the sale; yet, be permitted to spread the payment for the merchandise over a 90-day period

1   through the use of several checks. For its part, upon receiving the appropriate information from its

2   contracting merchant (including an ARC agreement signed by the purchasing customer, driver's

3   license for the purchasing customer, and copies of the checks used by the purchasing customer),

4   Global Check provides the merchant an approval code, which can either be in the form of a "G"

5   (Guaranteed), "V" (Verified), or "D" (Declined). If Global Check issues a "G" (Guaranteed) code,

6   the funds are guaranteed by Global Check to the merchant. If Global Check issues a "V" (Verified)

7   code, the funds are verified, and although not guaranteed by Global Check, it will assist the

8   merchant in collecting the fees if the customer's check is later dishonored. If Global Check issues a

9   "D" code, the customer has been declined or rejected for participation in Global Check's ARC

10  program, and Global Check will not process the transaction.

11        9.      As is further explained in Global Check's written sales presentations to its

12  merchants, Global Check charges the merchant a one-time initial setup fee of $500 (and $250 for

13  additional locations). In addition, Global Check charges the merchant a fee for each ARC

14  Conversion and Guarantee transaction that it processes. Global Check also charges its contracting

15  merchants a minimum monthly fee, regardless of the number of transactions processed.

16                      **THE BOILERPLATE GLOBAL CHECK CONTRACT**

17        10.     On or about June 2006, plaintiff executed a contract ("the Contract"), pursuant to

18  which it agreed to receive ARC and check guarantee services from defendant Global Check. A copy

19  of that executed contract is attached hereto as Exhibit 3. The Contract is a standard-form boilerplate

20  agreement drafted by defendant.

21        11.     The Contract provides the terms under which defendant was to provide ARC and

22  check guarantee services and pursuant to which plaintiff was to compensate defendant.

23        12.     Under the terms of the Contract, plaintiff was to be charged a fee totaling 1.39

24  percent of each ARC Conversion & Guarantee transaction performed by defendant. The Contract

25  also provided that a monthly fee of $ 0.20 would be charged by defendant for each "inquiry" made

26  by plaintiff of defendant. Lastly, the Contract provided that plaintiff would be liable for a $5.00

27  monthly fee for each month of the Contract. See Exhibit 3, at § 5.

28

4

13.    The Contract also contained a prominent disclaimer to the Fee Schedule section, providing that "No part of this document may be waived or altered." *Id.*

14.    Despite the inclusion of this explicit fee schedule and this unambiguous disclaimer, the Contract also provided, in a different section, that "[m]erchant shall receive via mail fee schedule and operating instructions. If schedule differes from below, use or installation constitutes acceptance of schedule." *Id.* at § 1.

15.    Following its execution of the Contract, plaintiff began using defendant's services and was charged according to the terms of the Contract.

## DEFENDANT'S SUBSEQUENT UNILATERAL CHANGE TO THE TERMS OF THE EXECUTED CONTRACT

16.    Several months after plaintiff executed the Contract and well after he began using defendant's services, he, like all other similarly situated merchants received a form letter from defendant. A copy of that form letter is attached hereto as Exhibit 4.

17.    Defendant's undated letter informed JPA Furniture that, "[t]his letter is to introduce new procedures and changes to the existing ARC program." *See* Ex. 4. Among the "new procedures" and "changes to the existing ARC program" that defendant unilaterally purported to impose, the letter described that, effective November 1, 2007, defendant would henceforth implement a "near removal of V code items." *Id.* As such, Global Check would no longer offer a "V" (Verified) code, pursuant to which it previously had assisted in the collection of these non-guaranteed funds, should the customer's checks alter be dishonored.

18.    More troubling, however, is that defendant's letter also purported to unilaterally impose a change to defendant's pricing and fee schedule. As the letter provided, "In order to provide the desired level of service some changes were made to procedures and pricing. These are outlined below. These changes will go into [sic] effect Nov 1st." (*Id.*). Among the changes to defendant's pricing that Global Check was now unilaterally imposing on JPA Furniture and similarly situated merchants were that: "[t]he current rate will increase by 3.7%. This is to cover the level of service desired." The letter further provided that "[t]he monthly fee will increase %5.00 for those merchants who have been on service over a year." The letter also provided that "[t]he

5

1 monthly minimum will increase $5.00 for those merchants who have been on service over a year."

2 (*Id.*).

3      19.    At no time did plaintiff agree to these unilaterally imposed changes—changes that

4 directly contradicted the express terms of the Contract previously executed by plaintiff.

5 **PLAINTIFF'S ATTEMPT TO EXIT THE CONTRACT IN LIGHT OF DEFENDANT'S**
**UNILATERALLY IMPOSED CHANGES, AND DEFENDANT'S REACTION**

6

7      20.    In light of these material changes purportedly being imposed unilaterally by Global

8 Check in contravention of the prior agreement. plaintiff immediately contacted defendant to inform

9 Global Check that JPA Furniture did not accept these changes, and consequently was opting to

10 terminate the parties' agreement.  By letter dated, November 1, 2007, which is attached hereto as

11 Exhibit 5, plaintiff's owner wrote Global Check. informing defendant that, "[e]ffective today

12 November 1, 2007 we will no longer utilize the ARC-90 day program and check conversion as

13 agreed in our contracts.  We will not pay any cancellation fee; the rate increase you have made is not

14 feasible for us or our customer [sic] to bear." (Ex. 5).  In the same letter, plaintiff assured Global

15 Check that "[w]e will continue to provide you with any and all information requested to help with

16 collections of any and all funds transfers." (*Id.*).  JPA Furniture's letter also demanded from

17 defendant to, "[p]lease fax a letter of acceptance for the termination of the ARC program and Check

18 Conversion Processor through Global." (*Id.*).

19      21.    Rather than accept JPA Furniture's letter, defendant informed JPA Furniture that

20 they could not exit the Contract, regardless of the material and unilateral changes that Global Check

21 had imposed.  Global Check instead informed JPA Furniture that it would continue to accrue and be

22 debited monthly minimum fees in the amount of $25.00 per month, and that if JPA Furniture

23 "terminated" the Contract during its pending term. it would be assessed a $200.00 forfeiture penalty,

24 which Global Check would automatically deduct from plaintiff's account.

25      22.    When the principals of JPA Furniture called to complain and follow up on their

26 letter, Global Check's sales representative dismissed their complaints derisively, laughed at them,

27 and told them, in effect, that Global Check could do whatever it wanted.

28

**CASE NO.:**

1        23.    Since defendant's unilateral imposition of its price changes, JPA Furniture has not

2    used defendant's ARC or Check Guarantee services for any new transactions. Nevertheless, as a

3    result of Global Check's unilateral imposition of the changes to the Contract, plaintiff's continue to

4    be debited by Global Check $25.00 each month for monthly and/or minimum monthly fees.

5    Further, Global Check continues to assert that it will debit and directly deduct $200.00 from

6    plaintiff's account, should JPA Furniture persist on exiting the agreement between the parties (an

7    agreement that Global Check has entirely altered and dishonored).

8        24.    Plaintiff, therefore, is effectively held economically hostage to defendant's

9    unilaterally whim, being debited monthly fees for a service that it no longer uses and to whose

10    altered terms it never agreed.

11        25.    All the foregoing is made all the more burdensome on plaintiff because in order to

12    obtain Global Check's services in the first instance, it expended significant money in leasing check

13    reading machines that defendant indicated were necessary to obtain its services.

14                                **CLASS ACTION ALLEGATIONS**

15        26.    Pursuant to Federal Rule of Civil Procedure 23 and to Section 1781 of the California

16    Civil Code, plaintiff seeks to bring this action as a class action on behalf of all similarly situated

17    contracting customers of defendant Global Check who, during the class period and during the terms

18    of their contracts were subjected to a fee increase or other contractual change of terms imposed by

19    defendant. The class period spans from June 6, 2004 and going forward until this matter is

20    resolved.

21        27.    Class certification of this action is appropriate because the number of affected class

22    members is too numerous so as to make joinder impracticable. Although the precise number of

23    affected class members is presently unknown to plaintiff, based on defendant's representation that

24    "Global Check proudly services thousands of quality reputable businesses throughout the U.S. and

25    Canada," plaintiff believes that there are a sufficient number of putative class members to satisfy the

26    numerosity requirement for class certification.

27

28

CASE NO.:

28.     Class certification is also appropriate because this action raises a question of general interest affecting all putative class members; namely, whether defendant's practice of unilaterally imposing fee increases and other contractual changes while a contract purportedly existed between Global Check and contracting merchants is an unfair business practice, a violation of the Consumer Legal Remedies Act, a breach of contract, or otherwise violates the common law of unjust enrichment.

29.     Plaintiff is a proper and typical class representative to represent the interests of the absent class members. Plaintiff is a member of the class, and the harm it sustained as well as the relief it seeks is co-extensive with that of all absent class members. Specifically, plaintiff alleges that, while under a purportedly governing contract with Global Check, defendant imposed upon plaintiff a fee increase and other contractual term changes, and that that action represents an unfair business practice, a violation of the Consumer Legal Remedies Act, a breach of contract, and/or unjust enrichment. Plaintiff has retained competent counsel, experienced in class action and consumer litigation to prosecute this action on behalf of the class.

## COUNT I

### (UNFAIR BUSINESS PRACTICE UNDER CALIFORNIA UNFAIR COMPETITION LAW, SECTION 17200 *ET. SEQ.* OF CALIFORNIA BUSINESS AND PROFESSIONS CODE)

30.     Plaintiff hereby incorporates by reference every allegation of this Complaint with the same force and effect as if it had been fully restated herein.

31.     Defendant's practice of imposing a fee increase on subscribers who were under a purportedly governing contract with defendant amounts to an unfair, unlawful, and/or deceptive business practice within the meaning of California's Business and Professions Code, Section 17200 *et. seq.* of the California Business and Professions Code.

32.     Plaintiff and the members of the class it seeks to represent all conveyed money to defendant. Thus, plaintiff and the class members all have been injured by being forced to pay defendant either increased monthly subscription fees, increased monthly, and/or increased minimum monthly fees that defendant had no legal basis to collect or impose. As such, plaintiff and the class

8

1    members have standing to and do hereby seek an order of restitution restoring to them these excess

2    fees paid to defendant.

3       33.     Plaintiff and the class members also have standing to and do hereby seek an order

4    declaring defendant's practice to be in violation of the California Unfair Competition Law,

5    enjoining defendant from imposing or collecting any increased fees that are not itemized in the

6    contract signed by the class members, and requiring defendant to restore any increased fees

7    collected to the aggrieved class members.

8       34.     Plaintiff and the class members also have standing to and do hereby seek an order

9    directing defendant to pay plaintiff's attorneys' fees and costs of suit.

10                          <u>COUNT II</u>

11    **(CONSUMER LEGAL REMEDIES ACT, SECTION 1750 ET. SEQ. OF THE CALIFORNIA**
                                **BUSINESS AND PROFESSIONS CODE)**

12

13       35.     Plaintiff hereby incorporates by reference every allegation of this Complaint with the

14    same force and effect as if it had been fully restated herein.

15       36.     Defendant's practices, as alleged herein, violate the Consumer Legal Remedies Act,

16    including but not limited to Sections 1770(9), 1770(14), and 1770(19) of the California Civil Code.

17       37.     Defendant's violations of the Consumer Legal Remedies Act have injured and

18    damaged plaintiff and the members of the class it seeks to represent by imposing upon them

19    increased fees and changed contractual terms that defendant had no legal authority to impose or

20    collect.

21       38.     Plaintiff will provide written notice and demand to defendant as is required under the

22    California Civil Code prior to seeking monetary damages for redress of these CLRA violation, and

23    will amend this Complaint to include a plea for money damages as redress for these CLRA

24    violations, once this communication and demand is made.  Until such time, plaintiff's CLRA count

25    seeks solely injunctive and declaratory relief.

26       39.     Pursuant to Section 1781 of the California Civil Code, plaintiff brings this action as a

27    class action on behalf of all similarly situated contracting customers of defendant Global Check

28    who, during the class period and during the terms of their contracts were subjected to a fee increase

9

1  or other contractual change of terms imposed by defendant.  Plaintiff seeks recovery of its and the

2  class members' actual damages (or alternatively, statutory damages), as well as declaratory and

3  injunctive relief, including a declaration that defendant's practices violate the Consumer Legal

4  Remedies Act, enjoining defendant from imposing or collecting fee increases during the pendency

5  of governing contracts with subscribers, restoring all moneys paid by plaintiff and the class

6  members in the form of improper and/or unlawful subscription fee increases to plaintiff and the

7  class members, as well as any other relief that the Court deems just and proper.

8         40.    Because defendant's position is so clearly baseless and without merit or any legal

9  justification, and because defendant has used this baseless interpretation of their agreements with

10  their subscribers to effectively extort fee increases from plaintiff and the class members, plaintiff

11  also seeks an award of punitive damages against defendant pursuant to Section 1780(a)(4) of the

12  California Civil Code.

13         41.    Plaintiff is also entitled to and hereby seeks an order directing defendant to pay

14  plaintiff's reasonable attorneys' fees and costs of suit, as awarded by the Court, pursuant to Section

15  1780(d) of the California Civil Code.

16                              **COUNT III**

17                          **(BREACH OF CONTRACT)**

18         42.    Plaintiff hereby incorporates by reference every allegation of this Complaint with the

19  same force and effect as if it had been fully restated herein.

20         43.    Defendant's act of unilaterally imposing a change to the services it provided and the

21  fees it would charge for its services, even while plaintiff and the class members were under a

22  governing contract with defendant, amounts to a material breach of Global Check's contracts with

23  plaintiff and the class members.  By operation of law, defendant's contracts with plaintiff and the

24  class members also were subject to an implied covenant of good faith and fair dealing.  Defendant's

25  actions, as alleged herein, also independently amount to a breach of this implied covenant, and

26  hence a breach of contract.

27         44.    There is no legal excuse or justification for defendant's breach.

28

**CASE NO.:**

1    45.    Defendant's breach of contract was material, and has proximately caused plaintiff

2    and the class members to sustain damages, including but not limited to, increased transaction,

3    monthly, monthly minimum, and or early cancellation fees.

4    46.    Plaintiff has performed all of its obligations under the Contract.

5    47.    Plaintiff is entitled to compensatory and consequential damages for defendant's

6    breach.

7    48.    Plaintiff is entitled to punitive damages for defendant's conduct in baselessly

8    imposing a unilateral change of contract terms to extort money from its contract merchants.

9                                    <u>COUNT IV</u>

10                    **(COMMON LAW OF UNJUST ENRICHMENT)**

11    49.    Plaintiff hereby incorporates by reference every allegation of this Complaint with the

12    same force and effect as if it had been fully restated herein.

13    50.    Plaintiff and the class members all conferred a benefit on defendant in the form of

14    money paid to defendant.

15    51.    Defendant appreciated these benefits conveyed upon it by plaintiff and the class

16    members, as defendant, *inter alia*, reported in its advertisements as to the many merchants that it

17    served.

18    52.    Given that defendant had no legal authority to collect the increased fees from

19    plaintiff and the class members, it would be inequitable to permit defendant to keep these benefits

20    (in the form of increased fees paid by plaintiff and the class members), as it would unjustly enrich

21    defendant at the expense of plaintiff and the class members.

22    53.    Plaintiff and the class members are, therefore, entitled to and do hereby seek an order

23    directing defendant to disgorge its ill-gotten gains conveyed upon them by plaintiff and the class

24    members.  Plaintiff also seeks an order directing payment of plaintiff's attorneys' fees and costs of

25    suit, as awarded by the Court, under the common fund or common benefit doctrine, as well as any

26    other relief that the Court deems just and proper.

27

28

                                            11

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for an order from this Court directing the following:

a.    designating plaintiff and his counsel as class representative and class counsel, respectively;

b.    entering judgment in favor of plaintiff and the class, and against defendant, on all counts;

c.    directing that this action may be maintained as a class action before this Court on behalf of the class pleaded herein;

d.    awarding plaintiff and the class members their actual damages, or alternatively statutory damages;

e.    directing that defendant restore to plaintiff and the class members the moneys paid by them to defendant in the form of transaction, minimum, and/or monthly minimum fee increases, and/or early cancellation fees;

f.    directing that defendant disgorge its ill-gotten gains;

g.    ordering that defendant be liable for punitive damages as determined by the fact-finder;

h.    declaring defendant's conduct unlawful, unfair business and/or deceptive practices, and enjoining defendant from continuing the practices complained of herein;

i.    directing that defendant pay plaintiff's attorneys' fees and costs of suit, as awarded by the Court; and,

j.    awarding such other relief as the Court deems just and proper.

Plaintiff demands a jury trial on all counts so triable.

Dated: June 2, 2008

Michael D. Braun
BRAUN LAW GROUP, P.C.

By: _Michael D. Braun_

Michael D. Braun
12304 Santa Monica Blvd., Suite 109
Los Angeles, CA 90025
Tel:    (310) 442-7755
Fax:    (310) 442-7756

12

CASE NO.:

1

Roy A. Katriel
THE KATRIEL LAW FIRM, PLLC
1101 30TH Street, NW Suite 500
Washington, DC 20007
Tel:   (202) 625-4342
Fax:   (202) 330-5593

2

3

4

*Counsel for Plaintiff*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO.:

# EXHIBIT 1



# GLOBAL ▓▓▓ CHECK

## ACCOUNTS RECEIVABLE CONVERSION

Sales code_____          Phone 800-988-6221 Fax 800-861-2219          Start Date_____

Global Check 266 S Magnolia ave. #201 El Cajon, Ca 92022 (GCS) and the undersigned merchant agree as follows:

**1. TERM** The term of this agreement shall be annual beginning on the date signed. Contract renews at the end of each term unless a written notice is received within 30 days of end of term. If terminated during the course thereof fees for the remainder of obligation are due upon termination. In the event of a merchant's breach, of any condition or prior authorizations shall be made null and void with the merchant possibly terminated from service. The merchant agree to approve all checks received at time of sale with customer physically present using instructions provided by GCS. Merchant shall receive via mail fee schedule and operating instructions. If schedule differs from bottom, use or installation constitutes acceptance of schedule.

**2. GUARANTEE:** GCS will purchase all approved checks returned to merchant drawn on U.S. institutions for the face value which conforms to the following with the check image and receipt received by GCS within three days of request.

2.1 The check is made payable to the business name for purchase of goods/services sold in the normal course of business.

2.2 The customer's name (A person) and physical address are imprinted on the check with customer's signature and merchant's endorsement.

2.3 The full day date telephone number and drivers license or state issued ID with expiration date after being reviewed must be legibly written on check.

2.4 Merchant has not accepted subsequent payment in any form the dishonored check in full or part including but not limited to cash, check, service performed, trade, or return of item dishonored check was written for. In the event of received payment merchant shall notify GCS immediately.

2.6 Two party, signature irregular, GCS declined, previously bank returned, stop, temporary, counterfeit, stolen, forged, authorization revoked, not authorized, and checks known at time of sale to be uncollectable may be considered nonconforming and subject to verification program.

2.7 Merchant shall provide GCS with any reasonable information pertaining to any check when requested.

2.8 Limits may be set for single check and or total monthly claim amounts for a period of ninety days upon commencement of service . Limitations are based on business type, average/low/high check amounts, and total value of monthly check returns that are over the excessive return rate.

2.9 Any or all guaranteed checks may be charged back in the event any fraud or deception from merchant is discovered before or after payment.

**3. ARC CONVERSION:** GCS will convert checks processed through P.O.S. equipment to electronic debits/credits subject to the following conditions. Guarantee service is included with conversion service provided %per check" and 0%.

3.1 All conditions of guarantee program apply to conversion service as outlined in section 2 and payments as outlined in section 4.

3.2 Unless otherwise noted merchant amount deposits occur 24 to 72 hours from bank closing. Bank closing occurs on the date specified in the transaction.

3.3 Deposits made will be total check amount unless fees due for conversion and or guarantee service, and prior charge backs if any.

3.4 If a customer's check is charged back to GCS for any reason merchant will request its refund request from GCS for same within 3 days . In addition, payment of funds for checks may be held back or reversed to cover charge backs until guaranteed status is determined. Merchant guarantees the availability of funds to cover charge backs. If a guaranteed check, payment is subject to section four.

3.5 Merchant guarantees each arc ARC conversion authorization will be completed and signed by the actual account holder in person at the time of sale.

3.6 Monetary limits may be set for single check and daily deposit amounts. These limits may include additional days in deposit.

3.7 Merchant is required to follow instructions given by GCS. Any charge back due to a failure to follow instructions will not be guaranteed.

3.8 In the event of termination of agreement by either party funds due merchant may be held and or debited from merchant's account to cover potential charge backs. These amounts will not exceed one months check volume and are based on compliance and charge back history.

3.9 Merchant guarantees proper customer notification will be given prior to converting checks to debits. Additionally merchant will permit customers to opt out if customer requests same.

3.10 Merchant shall use a check image provided by the sales associate to convert checks. After fourteen days have lapsed from date of conversion original checks shall be destroyed in a manner as to avoid customer information from being disseminated to any third party.

3.11 Merchant will cooperate fully with agents or employees of GCS in the recovery of returned items.

3.12 Merchant agrees to abide by and be bound to the rules and regulations of NACHA and any other entity having authority to regulate or in any way control the use of the ARC service.

**4. STATEMENT:** Payments due merchant are sent with statement on or about the 10/25th of each month . Activity statements are available via internet at www.globalcheck.com. If internet access not available statements will be provided via mail upon request.

**5. FEE SCHEDULE** One time installation fee_____     One time application fee_____     (To be made payable to sales rep)

| Select Service | % per check | Inquiry | Monthly fee | Monthly Minimum |
|---|---|---|---|---|
| ARC Conversion no Guarantee | 0.00 | | | |
| ARC Conversion & Guarantee | 1.39 | .20 | 5.00 | 0 |

Leave no spaces blank

**No part of this document may be waived or altered.** The monthly fee is due each month beginning on the date signed. A percent per check and per check inquiry is charged on each check authorization attempt. Percent per check is the face value of the check then "% PER CHECK" above. Monthly minimum is the minimum amount charged each month for the percent per check and per check inquiry combined and all checks authorized each month. Monthly fee, percent per check, inquiry, and monthly minimum fees will be debited on or about the first of each month for the prior month's activity. The excessive return rate is five percent of total dollar value. Merchant grants GCS irrevocable authority to debit fees due from merchant's account/accounts as is necessary to perform this agreement from the date signed to a date that is ninety days after either the last transaction or end of term, which ever is greater. GCS may initiate credit entries as well for payments received for merchant. A ten dollar fee will apply for each debit rejected by merchant's bank. Other fees if any will be provided with a written notice. On termination disagreement checks may be redeemed or purchased by GCS. Both parties agree the jurisdiction and venue shall be in San Diego county California for legal disputes if any arising from this agreement. GCS shall not be liable for items lost in mail periods. In the event of deliberate fraud by merchant it is agreed that damages due GCS from merchant will be the greater of the amount of the fraud or one thousand dollars. Merchant agrees and accepts all terms and conditions here in.

OWNER NAME: _Pamela Allard_ (Printed)          BUSINESS NAME: _JPA FURNITURE Inc_

SIGNATURE/DATE: _Pam Allard 1/6/06_          LOCATION ADDRESS: _1860 W BROADWAY RD._

SSN: _630 511 518_          CITY / STATE / ZIP: _MESA, AZ 85202_

Average/Low/High check _800 / 100 / 1000_          PHONE / FAX _(480) 615-0346 (480) 615-1155_

Product or service sold _FURNITURE_          Terminal / Check Reader _____

PLEASE INCLUDE A COPY OF A VOIDED BUSINESS CHECK          MERCHANT TO RETAIN YELLOW COPY

EXHIBIT 1
PAGE 14

# EXHIBIT 2



EXHIBIT 2
PAGE 15







## WHO IS GLOBAL CHECK?









EXHIBIT 2
PAGE 16

# What is the Multi-Pay Conversion (ARC) Program?

The Multi-pay conversion program is a program that allows the customer 90 days payment option via Account Receivable Conversion (ARC).

This means that a customer can take the item home TODAY and have up to 90 days to pay for it.

* No Credit Checks!
* Fast Approvals
* Guaranteed Funds

# What is ARC?

Account Receivable Conversion (ARC) is a reccurring payment that is programmed to ACH the customers bank account for the agreed upon dates and amounts.

ARC is simple conversion except the business retisus when to convert the checks

EXHIBIT 2
PAGE 17

# How does the process work?

## The process is easy as 1... 2... 3...





THE MERCHANDISE

**1**

THE CUSTOMER SIGNS THE MULTIPAY AGREEMENT FOR THE MERCHANDISE.

**2**

**3**

THE BUSINESS OWNER RUNS THE CHECKS THROUGH A CHECK IMAGER FOR ALL APPROVALS.

THEN KEYS THE AMOUNTS AND DATES OF CONVERSION.

FINALLY, WRITES ALL APPROVALS, DATES, AND AMOUNTS ON THE AGREEMENT.

EXHIBIT 2
PAGE 18



- You Can charge a **$25.00** Flex Payment Fee per check!
- Make a **$100.00 Bonus** every time this system is used!
  (If the customer uses 4 checks over 90 days.)
- **WITH NO RISK TO YOU!**
  The affordable cost is passed on to your customers.



- Develop a long term relationship with all your Customers.

# WHAT ARE THE BENEFITS?

Each check can be written for a maximum of $2500.00.

Accept an unlimited number of checks within the 90 days.

View statements online in real time.

If an ACH bounces - G.C. will attempt to collect the funds from the customers bank account or fund the business on the 10th or the 25th of the month, whichever occurs first.

**EXHIBIT 2**
**PAGE 19**

# The Flex Pay Fee of $25.00

$1000 Purchase



**THE CUSTOMER**

4 CHECKS

 $25

 $25

 $25

 $25

$100
Extra Money
Per Month
on
One ARC
Agreement



2 Customers a week equals
8 Customers a month and
4 Flex Pay Fees equals $800.00.

$8 \times {}^\$100 = {}^\$800$

Flex Pay Fee Bonuses Per Month

$^\$800 \times 12 \text{ Months} = {}^\$9600$

Flex Pay Fee Bonuses Per Year

EXHIBIT 2
PAGE 20

# SAMPLE PURCHASE OF $1000.00

This sample
Purchase is without
the Flex-pay Fee
Various Transaction
Combinations
Dollar amounts flowing
From left to right

| Check #1021 | Check #1022 | Check #1023 | Check #1024 |
| 1st | 30th | 60th | 90th |



2003 to 2004, $39.3 trillion dollars in checks were circulated.

45% of all consumers where checkwriters.

The national average check was $1070.50

Checks are still the #1 form of payment

You cannot afford to miss this opportunity

EXHIBIT 2
PAGE 21

# THE CODES & MORE......

I have the capability to view accounts in real time that _are on the_ _VISA Net work.._

## "G"

**Sample Code    1234G**

If approved with a "G" code the Merchant's funds are **Guaranteed**.

The Merchant will receive their funds usually within **24 to 72 hours......**

**Predicated Upon (*) Merchant Compliance.**

**3**

After scanning the check, the information will proceed to the Visa Network for approval. If declined by the Visa Network, the information proceeds to the NCN. If rejected by the N.C.N., G.C.S. will review the information for approval.

**RECEIVING INFORMATION**

**4**

**1**



**6** The Codes appear on the receipt from the Terminals.

**GCS**

**NCN**

**2**

**VISA**

EXHIBIT 2
PAGE 22



**Sample Code   1234V**

If approved with a "V" code, the merchant can feel confident that the check is probably good.

A "V" code is given when Visa and NCN reject the sale and GCS Sees nothing derogatory on the customer. This gives the merchant the final say to accept or reject the sale. If the check bounces GCS will aggressively pursue recovery.



At this time **33%** of Banks are on the **VISA Network.**

The number of Banks on this Network is growing annually.

## (*) CHARGE BACKS

A charge back may occur if the transaction was a result of any form of fraud. Merchants may avoid charge backs by adhering to Global Check Service contractual procedures.

EXHIBIT 2
PAGE 23







EXHIBIT 2
PAGE 24

# ARC'S EQUIPMENT

## Check Imagers



This equipment scans
and takes a picture
of the checks.
The images are sent
to Global Check Service.

## Nurit Terminals

This equipment stores
the conversion dates,
check amounts, and
customer's I.D. information.
The terminal sends all the
data to Global Check Service
for approvals.



EXHIBIT 2
PAGE 25



# THE 90-DAY (ARC) PAYMENT PLAN

**BROUGHT TO YOU BY:**

GLOBAL CHECK

NACHA
The Electronic Payments Association

Electronic Check Council

CHECK PAYMENT Solutions

© 2000 Global Check Svc. All registered trademarks/trade names belong to their respective owners.
© 2005 Check Payment Solutions is an independent provider of application processing services. All Rights Reserved

EXHIBIT 2
PAGE 26

# WHO IS GLOBAL CHECK SVC.?

## Global Check Svc.

is the leader in the check protection industry. Since 1994 they have served thousands of businesses throughout the U.S. and Canada.



EXHIBIT 2
PAGE 27



EXHIBIT 2
PAGE 28



THAT
WORLD
DOES NOT
EXIST
THAT'S
WHY
GLOBAL
CHECK SVC
CREATED...

EXHIBIT 2
PAGE 29

# The (ARC) Payment Plan

The (ARC) Payment Plan is a program that allows your customer 90-days payment option on your product or service via Account Receivable Conversion (ARC).







EXHIBIT 2
PAGE 30

# WHAT IS ARC?

Accounts Receivable Conversion (ARC) is a recurring payment that is programmed to ACH your customer's bank account for the agreed upon dates and amounts.



EXHIBIT 2
PAGE 31

# THE BENEFITS

- No Credit Checks to your Customers!
- 90% of no or bad credit customers are approved!
- Funds are Guaranteed to you...the merchant!
- Easy to set up, No Hassles!
- Great financing alternative for customers "Declined" from your traditional finance company.
- Also, great for customers who are buying or refinancing their home or has no interest in adding to their "good" credit.



EXHIBIT 2
PAGE 32



EXHIBIT 2
PAGE 33





There are 3 different codes, "G" Code, "V" Code and "D" Code.

EXHIBIT 2
PAGE 34



# RATES & FEES

## MERCHANT:CUSTOMER

### SERVICE FEE
Your customers can expect a one-time service fee of $75.00 when they set up for the ARC Payment Plan.

### ACCOUNT SET-UP
We charge each merchant an account set-up fee of $500.00. ($250 for additional locations)

### MERCHANT RATES/FEES
PER CHECK FEE
2.90% & .25 Per Check

STATEMENT FEE
$10.00 a Month

Monthly Minimum
$15.00 a Month

Now your capitalizing off of the "Declined" Customer!

GLOBAL CHECK

NACHA

EXHIBIT 2
PAGE 35

# THANK YOU

## GLOBAL CHECK

266 S. MAGNOLIA # 201/202

EL CAJON, CA 92020

(P) 800-988-6221 (F) 800-961-2219

www.globalcheck.com

support@globalcheck.com



CHECK;PAYMENT



Electronic Check
Council

NACHA
The Electronic Payments Association

VISIT OUR SITE:

**Coming Soon!**
## www.thecheckprogram.com

GLOBAL CHECK



Better Business Bureau

EXHIBIT 2
PAGE 36

# EXHIBIT 3



# GLOBAL CHECK

## ACCOUNTS RECEIVABLE CONVERSION

Sales code_____                    Phone 800-988-6221 Fax 800-981-2219          Start Date_____
Global Check  286 S Magnolia ave. #201  El Cajon, Ca 92022 (GCS) and the undersigned merchant agree as follows:

**1. TERM** The term of this agreement shall be annual beginning on the date signed. Contract renews at the end of each term unless a written notice is received within 30 days of end of term. If terminated during the course thereof  fees for the remainder of obligation are due upon termination. In the event of a merchant's breach of any condition all prior authorizations shall be made null and void with the merchant possibly terminated from service. The merchant agrees to approve all checks received at time of sale with customer physically present using instructions provided by GCS. Merchant shall receive via mail  fee schedule and operating instructions. If schedule differs from below, use or installation constitutes acceptance of schedule.

**2. GUARANTEE:** GCS will purchase all approved checks returned to merchant drawn on U.S. institutions for the face value which conform to the following with the check image and receipt received by GCS within three days of request.
2.1  The check is made payable to the business name for purchase of goods/services sold  in the normal course of business.
2.2  The customer's name (n person) and physical address are imprinted on the check with customer's signature and merchant's endorsement.
2.3  The full day time telephone number and drivers license or state issued ID with expiration date after being reviewed must be legibly written on check.
2.4  Merchant has not accepted subsequent payment in any form for dishonored check is full or part including but not limited to cash, check, service performed, trade, or return of item dishonored check was written for. In the event of received payment merchant shall notify GCS immediately.
2.6  Two party, signature irregular, GCS declined, previously bank returned, stop, temporary, counterfeit, stolen, for cash, authorization revoked, not authorized, and checks known at time of sale to be nonnegotiable may be considered nonconforming and subject to verification program.
2.7  Merchant shall provide GCS with any reasonable information pertaining to any check when requested.
2.8  Limits may be set for single check and or total monthly check amounts for a period of ninety days upon commencement of service . Limitations are based on business type, average/low/high check amounts, and total value of monthly check returns that are over the excessive return rate.
2.9  Any or all guaranteed checks may be charged back in the event any fraud or deception from merchant is discovered before or after payment.

**3. ARC CONVERSION:** GCS will convert checks processed through P.O.S. equipment to electronic debits/credits subject to the following conditions. Guarantee service is included with conversion service provided %per check  not 0%
3.1  All conditions of guarantee program apply to conversion service as outlined in section 2 and payments as outlined in section 4.
3.2  Unless otherwise noted merchant account deposits occur 24 to 72 hours from batch closing. Batch closing occurs on the date specified in the transaction.
3.3  Deposits made will be total check amount minus fees due for conversion and or guarantee service, and prior charge backs if any.
3.4  If a customer's check is charged back to GCS for any reason merchant will respond to retrieval request from GCS for same within 3 days . In addition, payment of funds for checks may be held back or reversed to cover charge backs until guaranteed status is determined. Merchant guarantees the availability of funds to cover charge backs. If a guaranteed check, payment is subject to section 4per
3.5  Merchant guarantees each non ARC conversion authorization will be completed and signed by the actual account holder in person at the time of sale.
3.6  Monetary limits may be set for single check and daily deposit amounts. These limits may include additional time to deposit.
3.7  Merchant is required to follow instructions given by GCS. Any charge back due to failure to follow instructions will not be guaranteed.
3.8  In the event of termination of agreement by either party funds due merchant may be held and or debited from merchant's account  to cover potential charge backs. These amounts will not exceed one months check volume and are based on compliance and charge back history.
3.9  Merchant guarantees proper  customer notification  will be given prior to converting checks to debits. Additionally merchant will permit customers to opt out if customer requests same.
3.10  Merchant shall use a check image  provided by the sales associate to convert checks. After fourteen days have lapsed from date of conversion original checks shall be destroyed in a manner as to avoid customer information from being disseminated to any third party.
3.11  Merchant will cooperate fully with agents or employees of GCS in the recovery of returned items.
3.12  Merchant agrees to abide by and be bound to the rules and regulations of NACHA and any other entity having authority to regulate or in any way control the use of the ARC service.

**4. STATEMENT:** Payments due merchant are sent with statement on or about the 10/25th of each month . Activity statements are available via internet at www.globalcheck.com. If internet access not available statements will be provided via mail upon request.

**5. FEE SCHEDULE  One time installation fee _____    One time application fee _____** (To be made payable to sales rep)

| Select Service | $ per check | Inquiry | Monthly fee | Monthly Minimum |
|---|---|---|---|---|
| ARC Conversion no Guarantee | 0.00 | | | |
| ARC Conversion & Guarantee | 1.39 | .20 | 5.00 | 0 |

Leave no spaces blank *

**No part of this document may be waived or altered.** The monthly fee is due each month beginning on the date signed. A percent per check and per check inquiry is charged on each check authorization attempt. Percent per check  is the face value of the check times '% PER CHECK' above. Monthly minimum is the minimum amount charged each month for the percent per check and per check inquiry combined on all checks authorized each month. Monthly fee, percent per check, inquiry, and monthly minimum fees will be debited on or about the first of each month for the prior months activity. The excessive return rate is five percent  of total dollar value. Merchant grants GCS irrevocable authority to debit fees due from merchant's account/records as is necessary to perform this agreement from the date signed to a date that is ninety days after either the last transaction or end of term, which ever is greatest. GCS may initiate credit entries as well for payments received for merchant. A ten dollar fee will apply for each debit rejected by merchant's bank. Other fees if any will be preceded with a written notice. On termination nonguaranteed checks may be returned or purchased by GCS. Both parties agree the jurisdiction and venue shall be in San Diego county California for legal disputes if any arising from this agreement. GCS shall not be liable for items lost in mail service. In the event of deliberate fraud by merchant it is agreed that damages due GCS from merchant will be the greater of the amount of the fraud or one thousand dollars. Merchant agrees and accepts all terms and conditions herein in.

OWNER NAME: Pamela ALLARA          BUSINESS NAME: JPA FURNITURE + AC
(Printed)
SIGNATURE/DATE: _____ 10/6/06   LOCATION ADDRESS: 1860 W. BROADWAY RD.
SSN: 630 51 518                          CITY / STATE / ZIP: MESA, AZ, 85202
Average/Low/High check 200 , 100 , 1000   PHONE / FAX  (480) 615-0346 (490) 615-1155
Product or service sold FURNITURE      Terminal / Check Reader _____
PLEASE INCLUDE A COPY OF A VOIDED BUSINESS CHECK               MERCHANT TO RETAIN YELLOW COPY

**EXHIBIT 3**
**PAGE 37**

# EXHIBIT 4



# GLOBAL CHECK

266 S. MAGNOLIA AVE # 201  EL CAJON, CA  92022  800-988-5221   fax 800-961-2219

JPA FURNITURE INC.
5380 W. BELL RD. STE. 154
GLENDALE, AZ 85308

This letter is to introduce new procedures and changes to the existing ARC program. The intent is to provide the level of service you desire. Many merchants expressed an opinion that the current program does not fit the needs of the stores using it. A few of those were the returns were too restrictive in so far as the claims procedures. Another was the issue of guaranteed items versus non-guaranteed items. The original intent of the program was to provide a finance option for customers who's credit rating was not in question. It appears it is primarily being used for customers who are not able to qualify for traditional financing. With that the risk is substantially higher. What we came up with is a simpler process and the near removal of V code items. In order to provide the desired level of service some changes were made to procedures and pricing. These are outlined below. These changes will go into affect Nov 1st.

PROCEDURE CHANGES.
1. We will be communicating with you more. With each document you send you will receive a confirmation fax in return. The return fax will confirm receipt of what you sent along with any items needing correction.
2. The Customer ARC Contract will be required. This form can be retrieved directly from www.globalcheck.com under the Merchant section. If you would like it to contain your company logo please contact us directly and we will arrange that for you. This form will need to be sent to us when we contact you about a claim.
3. More time will be given for you to respond to requests for information.
4. Higher return rates will be allowed prior to it affecting the guaranteed status of your claims.
5. Unless a check is forced through there will no longer be V codes attached to a transaction.
6. A new instruction card is available. This can be downloaded from www.globalcheck.com. Please refer to this for important information concerning procedures to be followed.

PRICING CHANGES.

1. The current rate will increase by 3.7%   This is to cover the cost of providing the level of service desired.
2. The monthly fee will increase $5.00 for those merchants who have been on service over a year.
3. The monthly minimum will increase $5.00 for those merchants who have been on service over a year.

EXHIBIT 4
PAGE 38

# EXHIBIT 5

**The $99 Furniture Store**
& accessories

**JPA Furniture Inc**

November 1st, 2007

Global Check
266 S. Magnolia Ave 2nd Fl.
El Cajon, Ca 92020
Tracy Brown

re: Acct # 14465708

Effective today November 1st 2007 we will no longer utilize the ARC- 90 day program and check conversion, as agreed in our contracts. We will not pay any cancellation fee; the rate increase that you have made is not feasible for us or our customer to bear.

Our Merchant Number is as follows:
Company name is JPA Furniture Inc.
Mesa account #: 14465708
We expect you to honor all previous ARC deposits, at the fees that were agreed to.
Any additional charges or fees that are deducted from our accounts will be in direct violation of our contract, and will be dealt with accordingly.
We will continue to provide you with any and all information requested to help with collections of any and all funds transfers.
Please fax a letter of acceptance for the termination of our ARC program and Check Conversion Processor through Global.

Fax documentation directly to:
Mesa fax- 480-615-1155

Your prompt response is greatly appreciated.

Thank You,

Pamela Allara
Owner

1860 w. broadway rd, mesa az 85202 • p: 480 615-0346 • f: 480 615-1155 • info@the99dollarfurniturestore.com

EXHIBIT 5
PAGE 39



ORIGINAL

℅JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

JPA FURNITURE INC., ON BEHALF OF ITSELF AND ALL OTHERS SIMILARLY SITUATED,

**(b)** County of Residence of First Listed Plaintiff    Mesa, Arizona
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Braun Law Group, P.C., 12304 Santa Monica Bl., #109, Los Angeles, CA 90025; Tel. 310-442-7755; Fax: 310-442-7756

## DEFENDANTS

GLOBAL CHECK SVC.    08 JUN -2  PM 12: 43

'08 CV 0.9 7 8 BEN BLM

County of Residence of First Listed Defendant    San Diego
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)    BY:          DEPUTY

## II. BASIS OF JURISDICTION    (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product       Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability   ☐ 365 Personal Injury - | of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &       Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander   ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'       Injury Product | ☐ 650 Airline Regs. | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability       Liability | ☐ 660 Occupational | | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | Safety/Health | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product   **PERSONAL PROPERTY** | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability   ☐ 370 Other Fraud | **LABOR** | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 380 Other Personal | Act | ☐ 864 SSID Title XVI | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability       Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal   ☐ 385 Property Damage | ☐ 730 Labor/Mgmt.Reporting | **FEDERAL TAX SUITS** | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury       Product Liability | & Disclosure Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** — **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | or Defendant) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting   ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 871 IRS—Third Party | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment       Sentence | ☐ 791 Empl. Ret. Inc. | 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/   Habeas Corpus: | Security Act | | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations   ☐ 530 General | **IMMIGRATION** | | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare   ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus - | | Under Equal Access |
| | Employment   ☐ 550 Civil Rights | Alien Detainee | | to Justice |
| | ☐ 446 Amer. w/Disabilities -   ☐ 555 Prison Condition | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | Actions | | State Statutes |
| | ☐ 440 Other Civil Rights | | | |

## V. ORIGIN    (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
CA Business & Professions Code § 17200; CA Civil Code 1750 et. seq.

Brief description of cause:
Violations of the CA Unfair Competition Law, CA Civil Remedies Act, Breach of Contract, etc. 28 U.S.C. 1332

## VII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $    Unknown at this time.

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE                              DOCKET NUMBER

DATE    06/02/2008

SIGNATURE OF ATTORNEY OF RECORD    _Michael D. Braun_

## FOR OFFICE USE ONLY

RECEIPT #  151446    AMOUNT  350.—    APPLYING IFP          JUDGE          MAG. JUDGE

6/2/08

