1  ROBERT S. BREWER, JR. (SBN 64294)
   JAMES S. MCNEILL (SBN 201663)
2  MCKENNA LONG & ALDRIDGE LLP
   Suite 3300, Symphony Towers
3  750 B Street
   San Diego, CA  92101
4  Telephone:     (619) 595-5400
   Facsimile:     (619) 595-5450
5
   Attorneys for Defendant
6  GLOBAL CHECK SERVICES

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11 JPA FURNITURE INC., ON BEHALF OF          CASE NO.  08 CV 0978 BEN (BLM)
   ITSELF AND ALL OTHERS
12 SIMILARLY SITUATED,                       **DEFENDANT GLOBAL CHECK
                                             SERVICES' NOTICE OF MOTION TO
13              Plaintiff,                    DISMISS PURSUANT TO FED.R.CIV.P.
                                             12(B)(1) AND 12(B)(6) AND MOTION TO
14 v.                                        STRIKE PUNITIVE DAMAGES
                                             [Fed.R.Civ.Proc. 12(b)(1), 12(b)(6) & 12(f)]**
15 GLOBAL CHECK SVC.,
                                             Date:      September 8, 2008
16              Defendant.                    Time:      10:30 a.m.
                                             Ctrm:      3
17                                           Judge:     Hon. Roger T. Benitez

18                                           Complaint filed:   June 2, 2008
                                             Trial Date:        None Set
19

20

21

22

23

24

25

26

27

28

McKenna Long &
  Aldridge LLP
Attorneys At Law
   San Diego                                                    08CV0978

**TO PLAINTIFF JPA FURNITURE INC. AND ITS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** THAT, on September 8, 2008, at 10:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of the above-entitled Court before the Honorable Roger T. Benitez, located at 880 Front Street, San Diego, CA, 92101, Defendant Global Check Services ("Global Check"), by and through its undersigned counsel, will and hereby does move the Court, pursuant to Fed.R.Civ.P. 12(b)(1), for an order dismissing Plaintiff JPA Furniture Inc.'s ("JPA" or "Plaintiff") complaint in its entirety for lack of subject matter jurisdiction.

In the alternative, should the Court determine it has subject matter jurisdiction over Plaintiff's Complaint, Global Check also will and hereby does move the Court for an order pursuant to Fed.R.Civ.P. 12(b)(6) dismissing "Count I" and "Count II" of the Complaint for failure to state a claim upon which relief may be granted, and to strike Plaintiff's prayers for punitive damages pursuant to Fed.R.Civ.P. 12(f).

These Motions are made on the following grounds:

1. <u>Dismissal of Complaint</u>: JPA fails to make allege a putative class of 100 or more members and fails to allege damages sufficient to invoke federal subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

2. <u>Dismissal of "Count I"</u>: By relying solely on allegations forming the basis of its separate breach of contract claim, JPA fails to state a claim under California's Unfair Competition Law, Cal. Civil Code § 17200 *et seq.* (the "UCL" or "Section 17200").

3. <u>Dismissal of "Count II"</u>: As an Arizona corporation suing on a purely commercial contract, Plaintiff has no standing to bring a claim under California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), which provides a right of action only to individual consumers.

4.    <u>Striking Prayers for Punitive Damages</u>:  Global Check will and hereby does move the Court for an order striking the following prayers for relief:

• Complaint, ¶ 40 (10:8-12):  "Because defendant's position is so clearly baseless and without merit or any legal justification, and because defendant has used this baseless interpretation of their agreements with their subscribers to effectively extort fee increases from plaintiff and the class members, plaintiff also seeks an award of punitive damages against defendant pursuant to Section 1780(a)(4) of the California Civil Code."

• Complaint, ¶ 48 (11:7-8):  "Plaintiff is entitled to punitive damages for defendant's conduct in baselessly imposing a unilateral change of contract terms to extort money from its contract merchants."

• Complaint, Prayer (12:15-16):  "order that defendant be liable for punitive damages as determined by the fact-finder."

These Motions are based upon this notice of motions and motions, the accompanying memorandum of points and authorities, the declarations of David Homoki and James S. McNeill, the Complaint and exhibit thereto, on such pleadings and files of the Court of which the Defendant may request the Court take judicial notice, and upon such other pleadings and oral and documentary evidence as may be presented at or before the time of the hearing on the Motions.

Dated: July 25, 2008                           McKenna Long & Aldridge LLP


By: s/ James S. McNeill
    James S. McNeill
    Attorneys for Defendant
    GLOBAL CHECK SERVICES
    E-mail: jmcneill@mckennalong.com

SD:22166527.1

McKenna Long &
Aldridge LLP
Attorneys At Law
San Diego

- 3 -                           08CV0978

1  ROBERT S. BREWER, JR. (SBN 64294)
   JAMES S. MCNEILL (SBN 201663)
2  MCKENNA LONG & ALDRIDGE LLP
   Suite 3300, Symphony Towers
3  750 B Street
   San Diego, CA  92101
4  Telephone:     (619) 595-5400
   Facsimile:     (619) 595-5450
5
   Attorneys for Defendant
6  GLOBAL CHECK SERVICES

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11 JPA FURNITURE INC., ON BEHALF OF      CASE NO.  08 CV 0978 BEN (BLM)
   ITSELF AND ALL OTHERS
12 SIMILARLY SITUATED,                   **DEFENDANT GLOBAL CHECK
                                         SERVICES' MEMORANDUM OF POINTS
13                 Plaintiff,            AND AUTHORITIES IN SUPPORT OF
                                         MOTION TO DISMISS PURSUANT TO
14 v.                                    FED.R.CIV.P. 12(B)(1) AND 12(B)(6) AND
                                         MOTION TO STRIKE PUNITIVE
15 GLOBAL CHECK SVC.,                    DAMAGES PURSUANT TO FED.R.CIV.P.
                                         12(F)**
16                 Defendants.
                                         Date:         September 8, 2008
17                                       Time:         10:30 a.m.
                                         Ctrm:         3
18                                       Judge:        Hon. Roger T. Benitez

19
                                         Complaint filed:   June 2, 2008
20                                       Trial Date:        None Set

21

22 \ \ \

23 \ \ \

24 \ \ \

25 \ \ \

26 \ \ \

27 \ \ \

28 \ \ \

McKenna Long &
Aldridge LLP
Attorneys At Law                                         08CV0978
San Diego

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     BACKGROUND ...................................................................................................1

III.    LEGAL STANDARDS .........................................................................................5

    A.      Motions to Dismiss .....................................................................................5

        1.      Federal Rule of Civil Procedure 12(b)(1) ....................................5

        2.      Federal Rule of Civil Procedure 12(b)(6) ....................................6

    B.      Motion to Strike .........................................................................................6

IV.    ARGUMENT ........................................................................................................7

    A.      Plaintiff Fails To Adequately Allege Subject Matter Jurisdiction.........................7

    B.      JPA, an Arizona Corporation, Has No Standing to Assert a Claim Under California's Consumer Legal Remedies Act As a Matter of Law .......................10

    C.      JPA Fails to State a Claim Under California Business & Professions Code § 17200...........................................................................................................10

    D.      JPA's Prayers for Punitive Damages Must Be Stricken ....................................12

V.     CONCLUSION .....................................................................................................13

1

## TABLE OF AUTHORITIES

2

Page

3

## CASES

4

*Abrego Abrego v. Dow Chemicals*
443 F.3d 676 (9th Cir. 2006) ..................................................................... 9

5

*Accuimage Diagnostics Corp. v. Terarecon, Inc.*
260 F.Supp.2d 941 (N.D.Cal. 2003) ......................................................... 11

6

*Ass'n of Am. Med. Colls. v. United States*
217 F.3d 770 (9th Cir. 2000) ................................................................. 6, 8

7

*Bardin v. Daimlerchrysler Corp.*
136 Cal.App.4th 1255 (2006) ................................................................... 11

8

*Branch v. Tunnell*
14 F.3d 449 (9th Cir. 1994) ...................................................................... 7

9

*Bureerong v. Uvawas*
922 F.Supp. 1450 (C.D. Cal. 1996).......................................................7, 12

10

*Cal. Grocers Ass'n v. Bank of America*
22 Cal.App.4th 205 (1994) ....................................................................... 10

11

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*
20 Cal.4th 163 (1999) ............................................................................... 11

12

*Comm. on Children's Tel. v. Gen. Foods Corp.*
35 Cal.3d 197 (1983) ................................................................................ 11

13

*Fantasy, Inc. v. Fogerty*
984 F.2d 1524 (9th Cir. 1993) .................................................................... 6

14

*Hall Roach Studios, Inc. v. Richard Fiener & Co., Inc.*
896 F.2d 1542 (9th Cir. 1990) .................................................................. 6, 7

15

*Heighley v. J.C. Penney Life Ins. Co.*
257 F. Supp. 2d 1241 (C.D. Cal. 2003) ..................................................... 11

16

*High Country Res. v. FERC*
255 F.3d 741 (9th Cir. 2001) ...................................................................... 6

17

*Ilkhchooyi v. Best*
37 Cal.App.4th 395 (1995) ........................................................................ 12

18

*In re Syntex Corp. Sec. Litig.*
95 F.3d 922 (9th Cir. 1996) ........................................................................ 6

19

*Lazar v. Hertz Corp.*
143 Cal.App.3d 128 (1983) ........................................................................ 10

20

*Loudermilk v. U.S. Bank Nat'l Ass'n*
479 F.3d 994 (9th Cir. 2007) ...................................................................... 7

21

*Navarro v. Block*
250 F.3d 729 (9th Cir. 2001) ...................................................................... 6

22

*Prudential Home Mortgage Co. v. Sup. Ct.*
66 Cal. App. 4th 1236 (1998) .................................................................... 10

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Rosenbluth Int'l. Inc. v. Sup. Crt.*
    101 Cal.App.4th 1073 (2002) .................................................................11

4

*Schmier v. U.S. Ct. of Apps. for the Ninth Cir.*
    279 F.3d 817 (9th Cir. 2002) ...................................................................6

5

*Slottow v. American Cas. Co. of Reading, Penn.*
    10 F.3d 1355 (9th Cir. 1993) .................................................................12

6

*St. Clair v. City of Chico*
    880 F.2d 199 (9th Cir.1989) ....................................................................8

7

*Stewart v. Life Ins. Co. of No. America*
    388 F. Supp. 2d 1138 (E.D. Cal. 2005) ................................................10

8

*Stock W., Inc. v. Confederated Tribes*
    873 F.2d 1221 (9th Cir. 1989) .................................................................6

9

10

*Tapley v. Lockwood Green Engineers, Inc.*
    502 F.2d 559 (8th Cir. 1974) ..............................................................6, 12

11

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*
    594 F.2d 730 (9th Cir. 1979) ...............................................................5, 8

12

*Ting v. AT&T*
    319 F.3d 1126 (9th Cir. 2003) ...............................................................10

13

*Tosco Corp. v. Cmtys. For a Better Env't*
    236 F.3d 495 (9th Cir. 2001) ...............................................................5, 8

14

15

*Wilkerson v. Butler*
    229 F.R.D. 166 (E.D. Cal. 2005) .............................................................7

16

17

**STATUTES**

28 U.S.C.
    Section 1332(d)..................................................................................1, 7

18

    Section 1332(d)(2)(5).........................................................................7, 8

19

Cal. Civ. Code
    Section 17200.......................................................................................1

20

    Section 1750..........................................................................................1

    Section 1761(d)....................................................................................10

21

    Section 1780(a)....................................................................................10

    Section 3294.........................................................................................12

22

23

**RULES**

Federal Rule of Civil Procedure

24

    Rule 12(b)(1)......................................................................................1, 5

    Rule 12(b)(6)...................................................................................1, 6, 13

25

    Rule 12(f)......................................................................................1, 12, 13

26

27

28

McKenna Long &
Aldridge LLP
Attorneys at Law
San Diego

- iii -

08CV0978

1    Defendant Global Check Services ("Global Check") hereby respectfully submits the

2  following Memorandum of Points and Authorities in Support of Its Motion to Dismiss and

3  Motion to Strike:

4                                          **I.**

5                                  **INTRODUCTION**

6    Plaintiff JPA Furniture, Inc. ("Plaintiff" or "JPA") sues on behalf of itself and a putative

7  class of others similarly situated on four separate Causes of Action.  But JPA alleges no federal

8  claim, and does not and cannot legitimately allege facts to carry its burden otherwise in

9  establishing federal subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C.

10  § 1332(d).  Accordingly, Plaintiff's Complaint should be dismissed in its entirety pursuant to

11  Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.

12    Furthermore, being an Arizona corporation suing on a purely commercial contract,

13  Plaintiff has no standing to bring a claim under California's Consumer Legal Remedies Act, Cal.

14  Civ. Code § 1750 *et seq.* ("CLRA"), which provides a right of action only to individual

15  *consumers*.  Similarly, by relying solely on allegations forming the basis of its separate breach of

16  contract claim, JPA fails to state a claim under California's Unfair Competition Law, Cal. Civil

17  Code § 17200 *et seq.* (the "UCL" or "Section 17200").  JPA also improperly includes prayers for

18  punitive damages for what are claims grounded in contract.  Thus, in the alternative, should the

19  Court determine it has federal subject matter jurisdiction over Plaintiff's Complaint, JPA's

20  "Count I" and "Count II" must be dismissed for failure to state a claim upon which relief may be

21  granted pursuant to Fed.R.Civ.P. 12(b)(6), and its prayers for punitive damages should be stricken

22  pursuant to Fed.R.Civ.P. 12(f).

23                                         **II.**

24                                  **BACKGROUND**

25    Global Check is organized as a partnership based in El Cajon, California, that provides

26  various electronic payment services to retailers across the county, including Account Receivable

27  Conversion ("ARC"), and check conversion, verification and guarantee services.  *See* Decl. of

28

1   David Homoki In Support of Mot. to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) and

2   Mot. to Strike Punitive Damages Pursuant to Fed.R.Civ.P. 12(f) ("Homoki Decl.") at ¶¶ 2-3.

3       Global Check's ARC service allows a retailer, such as JPA, to offer their customers a

4   means to purchase their product or service by spreading the payment over a period of 90 days.

5   *See* Homoki Decl. at ¶ 4.  For an ARC purchase, a customer submits checks written to the retailer

6   for each of the agreed periodic payments.  *See id.*  The checks for each payment are submitted by

7   the retailer to Global Check through an electronic "reader", which converts them to electronic

8   checks.  *See id.*  The funds for purchase are then withdrawn from the customer's account on

9   behalf of the retailer via electronic check on a schedule agreed to in advance by the customer.

10  *See id.*  Global Check also provides conversion of customer checks to electronic debits,

11  verification of checks retailers run through its system, and if requested, Global Check will

12  guarantee payment on checks that meet certain criteria.  These services—ARC, check conversion,

13  verification and guarantee—have existed in the retail industry for some time, and as offered by

14  Global Check are similar to services provided by entities such as Telechek™ and ACH

15  Commerce™.

16      Global Check is compensated for its services based on a fee schedule for each transaction

17  and a monthly service charge.  The fees Global Check charges were in large part developed based

18  on a determination of the "risk" that it will have to pay a retailer for a claim on a check that it

19  guarantees.  *See* Homoki Decl. at ¶ 5.  This "risk" is calculated using statistics published by the

20  Federal Reserve and publicly available.  For example, the Federal Reserve reported in its August

21  2002 *Federal Reserve Bulletin* that in Year 2000 a group of commercial banks, credit unions and

22  savings institutions (totaling 14,696 institutions) experienced an average check return rate of .85

23  percent of all checks negotiated.[1]  Based on these statistics, Global Check and companies offering

24  similar services assess the risk of guaranteeing checks, as well as the costs of attempting to collect

25  on returned checks, and set pricing to obtain a reasonable fee for their services, cover their costs,

26  and provide the retailer with creative, cost-effective methods for selling merchandise.

27  _____

28  [1] *See* http://www.federalreserve.gov/pubs/bulletin/2002/0802_2nd.pdf at 363 (table 4).

1     Specific to Global Check, its services are offered under a contract similar to that attached

2  as Exhibit 3 to Plaintiff's Complaint.  Key to Global Check's service pricing are the Federal

3  Reserve statistics and the contract provision by which an enrolled retailer "agrees to approve all

4  checks received at the time of sale with customer physically present using instructions provided

5  by [Global Check]."  Compl., Exh. 3, ¶ 1.  In other words, Global Check relies on government

6  statistics of return rates it may anticipate and the retailer's agreement to submit *all* checks for

7  approval through the system to determine the amount of monthly and per transaction fees to

8  charge to pay claims for guaranteed checks that may be returned or the costs to collect on

9  returned checks submitted for the ARC program.

10     But Global Check's actual experience in the rate of returned checks for clients such as

11  JPA showed dramatically higher return rates than the national average, likely caused by program

12  retailers "cherry-picking" customers to process through the Global Check system only those

13  customers thought to be a risk.  While it was anticipated that the rate of returned checks in

14  Global Check's guarantee program might be slightly above the Federal Reserve statistics, the

15  actual experience rate was an astronomical departure from predictable rates.  For example, JPA's

16  check return rate on those checks accepted into the guarantee program was 10% - *twelve times the*

17  *national average*.  *See* Homoki Decl. at ¶ 6.  If all checks JPA submitted for processing are

18  considered, the rate would have been 16%.  This demonstrates adverse selection, i.e., that JPA

19  only submitted those checks it believed were at risk for being returned, not *all* checks received

20  from customers, and that it did so in knowing breach of its contract with Global Check.

21     The experience of JPA's apparent adverse selection, or cherry-picking, is not unique to

22  JPA.  *See* Homoki Decl. at ¶ 6.  Other Global Check clients exhibited similar high return rates.

23  Accordingly, because of increased costs due to high check return rates, in September 2007

24  Global Check advised its retailer clients, including JPA, that it was changing the price of its

25  services, and increasing its level of service as well.  *See id.* at ¶¶ 7-8.  Global Check's contracts

26  with retailers allowed for changes to the fees and procedures, providing: "Merchant shall receive

27  via mail fee schedule and operating instructions.  If schedule differs from below, use or

28

1  installation constitutes acceptance of schedule." Compl., Exh. 3, ¶ 1. The contracts further

2  provided that "Other fees would be preceded with a written notice." *Id* at ¶ 5.

3      Previous to its change in procedures and fees, when a program participant submitted a

4  check for guarantee, it received back either (1) a denial, (2) a "G" code approving and

5  guaranteeing the check, or (3) a "V" code essentially leaving it to the retailer to accept the check,

6  but not guaranteeing the check or paying funds on it prior to collection. *See* Homoki Decl. at ¶ 8.

7  Changes to the procedures included an increase in the number of checks provided a guarantee,

8  because Global Check internally allowed a customer-purchaser to have a higher check return rate

9  and still guaranteed their check. *Id.* This virtually eliminated the "V" code status of checks. In

10  the case of JPA, as an example, the procedural changes resulted in guarantees, and then payment

11  of claims, on two checks Global Check would not have guaranteed under the prior fee and

12  procedure structure. *See id.* at ¶ 20.

13      Following Global Check sending its announcement of fee and procedure changes, and up

14  until the effective date of those changes on November 1, 2007, JPA continued to use the services,

15  with no request to cancel its service due to the changes, or to return its service to the original

16  contract terms. *See* Homoki Decl. at ¶¶ 9-10. Indeed, Global Check maintains a log of all calls to

17  its offices for customer service, as well as any merchant account access via the internet, and its

18  logs reflect that JPA made no contact specific to the fee changes until the effective date,

19  November 1. *See id.* On that date, the account representative assigned to JPA's account

20  contacted Global Check to advise that JPA wished to close its ARC account but maintain

21  conversion of checks to electronic debits through Global Check – a process whereby a retailer

22  runs checks through Global Check's system to have the paper check converted to an electronic

23  bank account debit. Global Check's customer service personnel advised the representative that a

24  new agreement would be necessary because JPA had an ARC service agreement, not a conversion

25  only agreement. *See id.* at ¶ 11. Later that same date, JPA contacted Global Check's customer

26  service personnel to lodge its displeasure with the rate increase, and its refusal to pay a

27  cancellation fee. *See id.* at ¶ 12. JPA was advised to contact a Global Check customer service

28  supervisor. *See id.* Global Check had no further contact with JPA until November 8, 2007, when

1    JPA called and requested that Global Check cancel its account. *See id.* at ¶¶ 13-14. Pursuant to

2    the contract and Global Check's procedures, a written notice was necessary to cancel JPA's

3    account. *See id.* at ¶ 14. Global Check received no further communications from JPA until being

4    served with its Complaint on June 3, 2008, and received no written request for cancellation until

5    it received such as an exhibit to the Complaint. *See id.* at ¶¶ 15-16. In the interim, JPA

6    frequently accessed its account online, and was paid on claims from returned checks. *See id.* at

7    ¶ 13. The account referenced by JPA's cancellation correspondence, "Acct # 14465708" (Compl.

8    Exh. 5) was cancelled on June 3, 2008. JPA has not requested cancellation of its other Global

9    Check account, Acct # 14465754. *See id.* at ¶ 17. That account was suspended on June 3, 2008

10   with no further monthly access charges.

11           Following service of the Complaint, and in an effort to avoid motion practice, counsel for

12   Global Check engaged in meet and confer discussions with JPA counsel on July 3, 2008

13   regarding JPA's lack of standing to pursue a claim under the CLRA and its claim to punitive

14   damages as part of its breach of contract claim. *See* Decl. of James S. McNeill in Support of Mot.

15   to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) and Mot. to Strike Punitive Damages

16   Pursuant to Fed.R.Civ.P. 12(f), at ¶ 3. Counsel for Global Check followed that meet and confer

17   discussion with a letter detailing Global Check's challenges to JPA's CLRA claim, UCL claim,

18   punitive damages prayer, and federal subject matter jurisdiction. *See id.* at ¶ 4. On July 11, 2008,

19   Counsel for JPA advised counsel for Global Check that JPA would not amend its complaint

20   unless and until Global Check filed a motion dismiss. *See id.* at ¶ 5.

21                                              **III.**

22                                     **LEGAL STANDARDS**

23   A.    ***Motions to Dismiss***

24         1.    **Federal Rule of Civil Procedure 12(b)(1)**

25           On a motion to dismiss a complaint for lack of subject matter jurisdiction pursuant to

26   Fed.R.Civ.P. 12(b)(1), the party asserting the claims has the burden to demonstrate that

27   jurisdiction exists. *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir.

28   1979); *Tosco Corp. v. Cmtys. For a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) ("When

1   subject matter jurisdiction is challenged under [Rule] 12(b)(1), the plaintiff has the burden of

2   proving jurisdiction in order to survive the motion"). The court presumes lack of jurisdiction

3   until the plaintiff proves otherwise. *See Stock W., Inc. v. Confederated Tribes,* 873 F.2d 1221,

4   1225 (9th Cir. 1989). In adjudicating a motion to dismiss for lack of jurisdiction, the court is not

5   limited to the pleadings, and may properly consider extrinsic evidence. *See Ass'n of Am. Med.*

6   *Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000). When the court concludes that it lacks

7   jurisdiction, it must dismiss the action without reaching the merits of the complaint. *See High*

8   *Country Res. v. FERC*, 255 F.3d 741, 748 (9th Cir. 2001).

9          **2.      Federal Rule of Civil Procedure 12(b)(6)**

10          A complaint should be dismissed under Fed.R.Civ.P. 12(b)(6) "where there is no

11   cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal

12   theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Although a district court ruling on

13   a motion to dismiss must accept as true the material factual allegations in the complaint, a court

14   need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory

15   legal allegations cast in the form of factual allegations. *In re Syntex Corp. Sec. Litig.*, 95 F.3d

16   922, 926 (9th Cir. 1996). A complaint must contain more than mere "conclusory allegations of

17   law" in order to survive a motion to dismiss. *Schmier v. U.S. Ct. of Apps. for the Ninth Cir.*, 279

18   F.3d 817, 820 (9th Cir. 2002).

19          While generally, a court may not consider matter outside the pleadings in ruling on a

20   Rule 12 motion, material properly submitted as part of the complaint may be considered. *Hall*

21   *Roach Studios, Inc. v. Richard Fiener & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

22   **B.      *Motion to Strike***

23          Rule 12(f) provides that the Court may strike from a pleading "any insufficient defense or

24   any redundant, immaterial, impertinent or scandalous matter." Fed.R.Civ.Proc. 12(f). The

25   purpose of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues.

26   *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993). Furthermore, a motion to strike

27   may be used to strike a prayer for relief where the remedies sought are not recoverable as a matter

28   of law. *Tapley v. Lockwood Green Engineers, Inc.*, 502 F.2d 559, 560 (8th Cir. 1974) (prayer for

1    punitive damages exceeded maximum allowed by statute); *Bureerong v. Uvawas*, 922 F.Supp.

2    1450, 1479, fn. 34 (C.D. Cal. 1996); *Wilkerson v. Butler*, 229 F.R.D. 166, 172 (E.D. Cal. 2005).

3            While generally, a court may not consider materials outside the pleadings in ruling on a

4    Rule 12 motion, those properly submitted as part of the complaint may be considered. *Hall*

5    *Roach Studios, Inc. v. Richard Fiener & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). In

6    addition, documents whose contents are alleged in the complaint, and whose authenticity is

7    unquestioned, such as the executed contract attached to JPA's Complaint, may likewise be

8    considered. *See, Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

9                                          **IV.**

10                                     **ARGUMENT**

11    A.    ***Plaintiff fails to adequately allege Subject Matter Jurisdiction***

12            JPA filed its action in the Southern District of California on June 2, 2008. JPA alleges no

13    federal claim, but rather, invokes federal subject matter jurisdiction based on the parties' diverse

14    citizenship and a solitary cursory allegation invoking the Class Action Fairness Act:

15            5.    Counts I-IV of the Complaint allege claims for violations of the
       California Unfair Competition Law, California's Civil Remedies Act,
16       breach of contract, and the common law of unjust enrichment, respectively,
       and all seek to represent a national class of customers of defendant Global
17       Check on whom, during the Class Period defined herein, defendant
       unilaterally imposed a change of terms to their contractual agreement while
18       these putative class members were parties to a contract with defendant. As
       such this Court has subject-matter jurisdiction over the class action
19       complaint pursuant to the Class Action Fairness Act of 2003, 28 U.S.C.
       Section 1332(d) (as amended 2005).
20

21            The Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA") confers federal

22    jurisdiction over cases "in which the matter in controversy exceeds the sum or value of

23    $5,000,000, exclusive of interests and costs, and is a class action" in which the aggregate number

24    of proposed plaintiffs is 100 or greater, with any member of the plaintiff class being a citizen of a

25    state different from the defendant. 28 U.S.C. § 1332(d)(2)(5) & (6); *Loudermilk v. U.S. Bank*

26    *Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007). To invoke federal jurisdiction, even under

27    CAFA, JPA bears the burden of demonstrating that jurisdiction exists, including that the amount

28

1    in controversy is satisfied. *Thornhill Publ'g Co.*, 594 F.2d at 733; *Tosco Corp.*, 236 F.3d at 499

2    ("When subject matter jurisdiction is challenged under [Rule] 12(b)(1), the plaintiff has the

3    burden of proving jurisdiction in order to survive the motion").

4        Here, while JPA alleges the parties are of diverse citizenship (Compl. ¶¶ 2 & 3), it alleges

5    only a "belief" that the number of putative class members will meet Rule 23 the numerosity

6    requirement, not CAFA's 100 class member requirement.  Compl. at ¶ 27 ("Although the precise

7    number of affected class members is presently unknown to plaintiff, based on defendant's

8    representation that 'Global Check proudly services thousands of reputable businesses throughout

9    the U.S. and Canada,' plaintiff believes that there are a sufficient number of putative class

10   members to satisfy the numerosity requirement for class certification").  JPA fails to make a

11   connection between the contract it alleges to be the foundation for all of its claims and the

12   Global Check advertising related to serving thousands of businesses to demonstrate that the class

13   would number 100 or more class members *for the claims JPA asserts*.

14       Moreover, JPA makes *no* allegation that it satisfies the CAFA requirement of an amount

15   in controversy exceeding $5,000,000.  Plaintiff fails to allege its own claimed damages in any

16   specific amount, alleges no amount of damages in its class allegation (Compl. at ¶¶ 26-29),

17   alleges no amount of damages in its prayer for damages (*id.* at p. 12), and alleges no amount in

18   controversy in its jurisdictional allegations (*id.* at ¶¶ 4-5).

19       In sum, JPA fails to allege a basis to invoke federal subject matter jurisdiction under

20   CAFA on the face of its complaint, such that Plaintiff's Complaint must be dismissed.

21       Furthermore, "For motions to dismiss under Rule 12(b)(1), unlike a motion under

22   Rule 12(b)(6), the moving party may submit 'affidavits or any other evidence properly before the

23   court.... It then becomes necessary for the party opposing the motion to present affidavits or any

24   other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses

25   subject matter jurisdiction.'"  *Ass'n of Am. Med. Colls.*, 217 F.3d at 778 quoting *St. Clair v. City*

26   *of Chico*, 880 F.2d 199, 201 (9th Cir.1989).  Global Check has examined its records to calculate

27   the total amount of funds received from contracting customers, including JPA, under the new rate

28   structure over and above the original rate structure Plaintiff seeks to reinstate.  Regardless of any

1    aggregation of claims for purposes of invoking CAFA, or including attorneys fees, or valuing the

2    requested relief of preventing charges at the new rate structure for some period – JPA simply

3    cannot validly allege an amount in controversy exceeding $5,000,000.

4         As an initial matter, since the rate increase was placed into effect, JPA itself has been

5    charged a *total* additional amount of only $225.87.  Homoki Decl. at ¶ 20.  However, the rate

6    changes also included a greater service level, such that Global Check guaranteed checks under the

7    new rate structure that it would not have guaranteed under the old structure.  *See id.* at ¶ 8.  This

8    expansion of checks qualifying for guarantees resulted in Global Check paying JPA a total of

9    $356.01 on claims for "bad checks" run through its system that it would not have paid but for the

10   new fees and procedures.  *See id.* at ¶ 20.  Under the theories of liability alleged, were Plaintiff to

11   prevail Global Check would be entitled to an offset, or *quantum meruit* payment, for the claims

12   paid because of the new guarantee parameters, such that Plaintiff would actually <u>owe</u>

13   <u>Global Check</u> at least $130.14 [the net of $225.87 in additional fees less the $356.01 of claims

14   Global Check would not otherwise have paid].

15        Moreover, aggregating class member claims provides no basis to allege over $5,000,000

16   in controversy.  From Global Check's institution of the rate increase in November 2007 through

17   June 2008, for all putative class members (*i.e.*, those under contracts with Global Check similar to

18   Plaintiff whose rates were increased in November 2007), the *total* additional amount (net of the

19   old rates) collected under the new rate structure is $167,883.35.  *See* Homoki Decl. at ¶ 19.

20   During that period, Global Check paid $42,667.39 in claims for checks it would not have

21   guaranteed under the old rate structure and terms, such that when offset against the additional fees

22   received, the net amount is currently $125,215.96 – *for the entire class*.  *See id.* at ¶ 19.

23        It is Plaintiff's burden to establish the requisites of the federal subject matter jurisdiction it

24   seeks to invoke, and that should be by no less than the preponderance of the evidence standard

25   applied to defendants seeking to remove actions from state courts by similarly invoking federal

26   jurisdiction under CAFA.  *See, e.g., Abrego Abrego v. Dow Chemicals*, 443 F.3d 676, 683 (9th

27   Cir. 2006) ("Where the complaint does not specify the amount of damages sought, the removing

28   defendant must prove by a preponderance of the evidence that the amount in controversy

1   requirement has been met").  Given the actual additional amounts collected under the new rate

2   structure, there is no state of facts JPA can establish to satisfy the over $5,000,000 amount in

3   controversy requirement for invoking federal subject matter jurisdiction under CAFA, be it via

4   damages, restitution, specious punitive damages allegations, or attorneys fees, or by any

5   aggregation of the *realistic* potentialities thereof.

6        Plaintiff's Complaint must be dismissed for lack of subject matter jurisdiction.

7   **B.**    ***JPA, an Arizona Corporation, Has No Standing to Assert a Claim Under California's***

8        ***Consumer Legal Remedies Act As a Matter of Law***

9        Only a "consumer" has standing to bring a CLRA claim.  Cal. Civ. Code § 1780(a) ("Any

10  consumer … may bring an action ….").  A consumer is defined as "*an individual* who seeks or

11  acquires, by purchase or lease any goods or services for *personal, family, or household*

12  *purposes.*" Cal. Civ. Code § 1761(d) (emphasis added).  Consequently, a business entity cannot

13  bring a claim under the CLRA because it is not "an individual" and is not using the service for

14  "personal, family, or household purposes."  *See Lazar v. Hertz Corp.*, 143 Cal.App.3d 128, 142

15  (1983) (attorney who used rental cars for business and not consumer purposes could not be class

16  representative in CLRA claim); *Cal. Grocers Ass'n v. Bank of America*, 22 Cal.App.4th 205, 217

17  (1994) (retail grocers association cannot bring CLRA claim).  JPA is not an "individual" or a

18  "consumer", it is a corporation.  Compl. at ¶ 2.  Nor can JPA allege that its contract with

19  Global Check is for its own purchase of goods or services for "personal, family or household

20  purposes."  Rather, its contract with Global Check is a commercial contract for JPA's own

21  business purposes and operations.  As such, JPA Furniture has no standing to allege a claim under

22  the CLRA for itself or a class.  *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003) ("CLRA does

23  not apply to commercial or government contracts, …").  For this reason, Plaintiff's CLRA cause

24  of action fails.

25  **C.**    ***JPA Fails to State a Claim Under California Business & Professions Code § 17200***

26       Courts have held that where there is an adequate remedy at law, a claim for equitable

27  relief under the UCL is barred.  *Prudential Home Mortgage Co. v. Sup. Ct.*, 66 Cal. App. 4th

28  1236, 1249-50 (1998); *see also Stewart v. Life Ins. Co. of No. America*, 388 F. Supp. 2d 1138,

1144 (E.D. Cal. 2005); *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241 (C.D. Cal. 2003). JPA does not attempt to allege facts demonstrating that there is no adequate remedy at law available to it. Quite the contrary, JPA alleges that the same facts that give rise to its UCL claim also give rise to a breach of contract claim. Given Plaintiffs' prayer for calculable damages, their claim in equity pursuant to UCL should be barred.

Specifically, JPA's Complaint alleges this claim is based on the same change in the fee structure that also supports its claim for breach of contract, i.e., the breach of contract is the predicate act for the UCL claim. Compl. at ¶ 32. But a Section 17200 claim cannot be founded on common law principles. *Bardin v. Daimlerchrysler Corp.*, 136 Cal.App.4th 1255, 1272 (2006) ("reliance on general common law principles to support a cause of action for unfair competition is unavailing"). Thus, a breach of contract claim cannot be the basis for a Section 17200 claim. *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F.Supp.2d 941, 954 (N.D.Cal. 2003). Consequently, the Complaint fails to allege a Section 17200 claim for unlawful business practices.

Likewise, the Complaint also fails to allege a Section 17200 claim under the "unfair" prong. The "unfair" prong encompasses conduct that "threatens an incipient violation of *antitrust law*, or violates the policy or spirit of one of those laws or otherwise *significantly threatens or harms competition*." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 187 (1999) (emphasis added). The Complaint fails to allege any threat to competition or a violation of antitrust law.

The "fraudulent" or "deceptive" prong is also unavailing. A business practice is "fraudulent" within the meaning of Section 17200 if "members of the public are likely to be deceived." *Comm. on Children's Tel. v. Gen. Foods Corp.*, 35 Cal.3d 197, 211 (1983). None of JPA's allegations pertain to any statements or advertising by Global Check to any *consumer*. Nor is there any allegation that any Global Check statement or advertising was likely to deceive a reasonable *consumer*. Furthermore business entities like JPA Furniture are not "members of the public," and it is the public in general that must be the focus of the alleged harm of the purported fraudulent business practice. *Rosenbluth Int'l. Inc. v. Sup. Crt.*, 101 Cal.App.4th 1073, 1075

1  (2002).  Therefore this prong of the statute is not applicable to the claims made.  Furthermore, as

2  a business entity, JPA does not even have standing to assert a Section 17200 claim under the

3  "fraudulent" prong.

4      Accordingly, JPA cannot state a claim against Global Check under the UCL.

5  **D.    *JPA's Prayers for Punitive Damages Must Be Stricken***

6      Plaintiff's Second and Third Causes of Action, and its general Prayer for Relief, include

7  improper prayers for punitive damages that should be stricken under Fed.R.Civ.P. 12(f).  Compl.,

8  ¶¶ 40, 48, & Prayer at 12:15-16.  A motion to strike may be used to strike a prayer for relief

9  where the remedies sought are not recoverable as a matter of law.  *Tapley*, 502 F.2d at 560;

10  *Bureerong*, 922 F.Supp. at 1479, fn. 34.

11      Under California law, punitive damages are available only for "the breach of an obligation

12  *not arising from contract*."  Cal.Civ.Code § 3294 (emphasis added).  *See, Ilkhchooyi v. Best*, 37

13  Cal.App.4th 395, 411-412 (1995) (striking punitive damages prayer); *Slottow v. American Cas.*

14  *Co. of Reading, Penn.*, 10 F.3d 1355, 1361 (9th Cir. 1993) ("punitive damages aren't available in

15  California for simple breaches of contract, no matter how willful"; reversing punitive damages

16  award).

17      As detailed above, JPA Furniture has no standing to assert a claim under the CLRA, and

18  thus cannot seek punitive damages under that statutory scheme.  In addition, Plaintiff's only other

19  basis for seeking punitive damages is its breach of contract claim.  Plaintiff alleges no

20  independent tort, no injury and no damages outside alleged breaches of the Agreement.

21      Because (1) JPA has no standing to assert a claim under the CLRA; (2) punitive damages

22  are not available for actions sounding in contract; (3) the only other claim in which JPA prays for

23  punitive damages is a breach of contract claim; and (4) JPA fails to allege any separate,

24  actionable tort supporting punitive damages, the Court must strike the following prayers for

25  relief:

26      •    Complaint, ¶ 40 (10:8-12):      "Because defendant's position is so clearly
                                             baseless and without merit or any legal
27                                           justification, and because defendant has used this
                                             baseless interpretation of their agreements with
28

their subscribers to effectively extort fee increases from plaintiff and the class members, plaintiff also seeks an award of punitive damages against defendant pursuant to Section 1780(a)(4) of the California Civil Code."

• Complaint, ¶ 48 (11:7-8):     "Plaintiff is entitled to punitive damages for defendant's conduct in baselessly imposing a unilateral change of contract terms to extort money from its contract merchants."

• Complaint, Prayer (12:15-16):     "order that defendant be liable for punitive damages as determined by the fact-finder."

**V.**

**CONCLUSION**

Having no basis for invoking federal jurisdiction under CAFA or otherwise, this Court lacks jurisdiction over Plaintiff's claims and the Complaint should be dismissed in its entirety. In the alternative, should the Court determine it may exercise jurisdiction over JPA's Complaint, its "Count I" claiming a violation of the UCL and "Count II" claiming a violation of the CLRA must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for a failure to state a claim, and such dismissal should be with prejudice given that JPA cannot allege standing as a consumer for purposes of a claim under the CLRA, nor can it allege any predicate act as a basis for a claim under the UCL outside of its claim for breach of contract. In addition, Plaintiff's prayer for punitive damages in this breach of contract action must be stricken pursuant to Fed.R.Civ.P. 12(f).

Dated: July 25, 2008                    McKenna Long & Aldridge LLP


By:    s/James S. McNeill
       James S. McNeill
       Attorneys for Defendant
       GLOBAL CHECK SERVICES
       E-mail: jmcneill@mckennalong.com

SD:22166876.1

ROBERT S. BREWER, JR. (SBN 64294)
JAMES S. MCNEILL (SBN 201663)
MCKENNA LONG & ALDRIDGE LLP
Suite 3300, Symphony Towers
750 B Street
San Diego, CA  92101
Telephone:      (619) 595-5400
Facsimile:      (619) 595-5450

Attorneys for Defendant
GLOBAL CHECK SERVICES

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JPA FURNITURE INC., ON BEHALF OF ITSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>                    Plaintiff,<br><br>v.<br><br>GLOBAL CHECK SVC.,<br><br>                    Defendants. | CASE NO.  08 CV 0978 BEN (BLM)<br><br>**DECLARATION OF DAVID HOMOKI IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED.R.CIV.P.. 12(B)(1) AND 12(B)(6) AND MOTION TO STRIKE PUNITIVE DAMAGES PURSUANT TO FED.R.CIV.P. 12(F)**<br><br>Date:          September 8, 2008<br>Time:         10:30 a.m.<br>Ctrm:        3<br>Judge:       Hon. Roger T. Benitez<br><br>Complaint filed:    June 2, 2008<br>Trial Date:          None Set |

I, DAVID HOMOKI, declare:

1.      I am the Managing Partner of Global Check Services ("Global Check").  As such, I have personal knowledge of the facts stated herein and can and will testify competently to the facts stated herein.  I submit this declaration in support of Global Check's Motion To Dismiss Pursuant To Fed.R.Civ.Proc. 12(B)(1) And 12(B)(6) And Motion To Strike Punitive Damages, filed concurrently herewith.

2.      Global Check is a partnership with its principal place of business located in El Cajon, California.

3.      Generally, Global Check offers services to web-based and brick and mortar retailers for the use of electronic payment for purchases of goods and services.

4.      Plaintiff JPA Furniture, Inc., ("JPA") entered into to a contract for services from Global Check on or about June 6, 2006 through an independent sales representative.  Specifically, JPA contracted for Global Check's Account Receivable Conversion ("ARC") program, whereby it could offer its customers up to 90 days to pay for goods purchased from JPA.  As part of this program, JPA could have its customers agree to the ARC program and set up a payment schedule, have customer checks converted into electronic debits ("check conversion"), verify to determine the risk of accepting a check, or have a check payment guaranteed by Global Check.

5.      Global Check set its pricing based on publicly available Federal Reserve statistics demonstrating that the general rate of return for checks processed by banking institutions as of the year 2000 was .85%, i.e., less than one returned check out of every 100 processed.

6.      Through 2006 and early 2007, Global Check noted that its actual rates of return for checks it guaranteed for retailers contracting for its services was approximately 10%.  The rate of returns for checks Global Check guaranteed for JPA through its contract term, June of 2006 until cancelled in June 2008, was likewise approximately 10%, or 10 checks returned for every 100 guaranteed.  Of all checks submitted by JPA for processing, including verification, conversion, guarantee and ARC requests, JPA had a 16% check return rate, or 16 checks returned for every 100 submitted for processing.

7.     In order to cover the costs of processing payments and paying claims for guaranteed checks given the actual rate of check returns significantly exceeded the national average, Global Check determined appropriate fee adjustments and processing changes that would allow it to expand its services to guarantee more checks while allowing it to better cover the costs of such guarantees and efforts to collect on both guaranteed and processed checks.

8.     In September 2007, Global Check sent a letter by mail to all retailers enrolled in its ARC program advising of its fee increases effective November 1, 2007. The notice also advised participating retailers of changes in processing occurring in conjunction with the rate increase, including the change to guarantee checks of retailer customers that have higher check return rates than that allowed previously for check guarantees. This change resulted in an increased frequency of check guarantees and virtual elimination of the "V" category of check verification that placed the risk of accepting a check on the retailer, i.e., "V"-coded checks were not guaranteed by Global Check. Only "G"-coded checks were guaranteed by Global Check and provided the retailer with payment within 24 to 72 hours.

9.     Global Check provides each retailer enrolled in its various programs with internet access to its own account(s), such that retailers may check the status of checks processed, claims payment, and fees charged online. Global Check's online system logs each access made by retailers to their accounts, including the date, time and activity of the access. In addition, Global Check's customer service system logs each call to the customer service center by a retailer, tracked by their account, and includes a summary of the contact by the customer service representative processing the call. I have reviewed the logs of JPA account access and JPA calls to Global Check's customer service center.

10.     Following Global Check's mailing of a notice of fees increases to JPA, JPA continued to access its account and submit checks for processing until November 1, 2007. During that period, at no time did JPA request that Global Check cancel any of its accounts.

11.     The Global Check customer service logs contain an entry on November 1, 2007 summarizing a call on behalf of JPA by its independent account representative. The summary states that at 10:03 a.m. Pacific Time on November 1, 2007, the account representative called to

1   request that Global Check close JPA's ARC account but continue to provide check conversion

2   services (i.e., continue to convert checks JPA submitted into electronic debits). The entry further

3   states that the representative was advised by Global Check customer service that a new agreement

4   would be required to comply with the request because the only agreements existing between JPA

5   and Global Check included ARC service.

6          12.     The Global Check customer service logs also contain an entry on November 1,

7   2007 summarizing a call from a representative of JPA itself. The summary states that at 1:04

8   p.m. Pacific Time on November 1, 2007, a representative of JPA called to express displeasure

9   with the rate increase and a refusal to pay any cancellation fee. The entry further states that JPA

10  was advised to contact a Global Check supervisor regarding waiver of the cancellation fees.

11         13.     The Global Check customer service logs show no additional calls by JPA to

12  Global Check from November 1 to November 7. But the logs do show that JPA accessed its

13  Global Check account 3 times after its November 1, 2007, including access at 3:53 p.m. Pacific

14  Time on November 1, 2007, and at 11:16 a.m. and 11:40 a.m. Pacific Time on November 7, 2007.

15         14.     The Global Check customer service logs contain an entry on November 8, 2007

16  summarizing a call from a representative of JPA itself. The summary states that at 10:14 a.m.

17  Pacific Time on November 8, 2007, a representative of JPA called to cancel JPA's ARC account

18  because of the price change, and threatened litigation over the price increase. Global Check's

19  contracts and procedures require written notice of cancellation requests.

20         15.     At no time prior to receiving service of the Complaint did Global Check receive a

21  written request to cancel any JPA account.

22         16.     Global Check received the Complaint by service on June 3, 2008, and for the first

23  time received a written request for cancellation of JPA account number 14465708, attached as

24  exhibit 5 to the Complaint.

25         17.     Following receipt with service of the Complaint of JPA's written request to cancel

26  its Global Check account number 14465708, Global Check cancelled the account without

27  assessing any cancellation fee, though a cancellation fee is allowed by the contract. JPA also has

28  a separate account with Global Check, account number 14465754. Global Check has not

1 | received a written request to cancel account number 14465754, and the account is currently

2 | suspended with no monthly charges being assessed.

3 |      18.    As the Managing Partner of Global Check, I have access to all records of the fees

4 | charged, claims paid, and checks processed for retailers using Global Check's services.  I have

5 | reviewed the records of the fees charged, checks processed, and claims paid for all retailers using

6 | Global Check's services since the rate increase went into effect on November 1, 2007 through

7 | June 30, 2008.

8 |      19.    For all retailers subject to the increased rate schedule, during the period of

9 | November 1, 2007 through June 30, 2008, Global Check collected an additional $167,883.35 in

10 | monthly fees, monthly minimum charges and per-check transaction charges over that it would

11 | have collected under the pre-November 2007 rate schedule.  Global check also paid a total of

12 | $42,667.39 on claims for returned checks guaranteed under the new procedures effective

13 | November 1, 2007 that would not have been guaranteed under the former procedure and fee

14 | schedule.

15 |      20.    Specific to JPA, for the period of November 1, 2007 through June 3, 2008, Global

16 | Check collected an additional $225.87 in monthly fees, monthly minimum charges and per-check

17 | transaction charges over that it would have collected under the pre-November 2007 rate schedule.

18 | Global check also paid JPA $356.01 on claims for returned checks guaranteed under the new

19 | procedures effective November 1, 2007 that would not have been guaranteed under the former

20 | procedure and fee schedule.

21 |     I declare under penalty of perjury under the laws of the United State of America that the

22 | foregoing is true and correct.  Executed on July 25, 2008, at San Diego, California.

23

24 |                                              DAVID HOMOKI

25 | SD:22166769.2

26

27

28

1   ROBERT S. BREWER, JR. (SBN 64294)
    JAMES S. MCNEILL (SBN 201663)
2   MCKENNA LONG & ALDRIDGE LLP
    Suite 3300, Symphony Towers
3   750 B Street
    San Diego, CA  92101
4   Telephone:    (619) 595-5400
    Facsimile:    (619) 595-5450
5
    Attorneys for Defendant
6   GLOBAL CHECK SERVICES

7

8                   UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11  JPA FURNITURE INC., ON BEHALF OF         CASE NO.  08 CV 0978 BEN (BLM)
    ITSELF AND ALL OTHERS
12  SIMILARLY SITUATED,                      **DECLARATION OF JAMES S. MCNEILL
                                             IN SUPPORT OF DEFENDANT GLOBAL
13                  Plaintiff,               CHECK SERVICES' MOTION TO
                                             DISMISS PURSUANT TO
14  v.                                       FED.R.CIV.PROC. 12(B)(1) AND 12(B)(6)
                                             AND MOTION TO STRIKE PUNITIVE
15  GLOBAL CHECK SVC.,                       DAMAGES PURSUANT TO FED.R.CIV.P.
                                             12(F)**
16                  Defendants.
                                             Date:        September 8, 2008
17                                           Time:        10:30 a.m.
                                             Ctrm:        3
18                                           Judge:       Hon. Roger T. Benitez

19                                           Complaint filed:    June 2, 2008
                                             Trial Date:         None Set
20

21

22

23

24

25

26

27

28

I, James S. McNeill, declare and state:

1.      I am an attorney licensed to practice law in the State of California and a partner with the law firm of McKenna Long & Aldridge LLP, counsel of record in this case for Global Check Services ("Global Check").  All the facts set forth in this declaration are known to me personally, and if called as a witness in this proceeding I would testify competently to them.

2.      I submit this declaration to advise the Court of the parties' efforts to meet and confer regarding the Complaint in advance of motion practice.

3.      On July 3, 2008, I engaged in a telephonic meet and confer conference with counsel for Plaintiff JPA Furniture, Inc. ("JPA") to discuss various issues raised by JPA's Complaint in an effort to have JPA amend its Complaint and avoid motion practice.  Specifically, I advised counsel for JPA of Global Check's position that as a business, JPA could not assert a claim under California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), and that its prayer for punitive damages under the breach of contract claim was improper under California law.

4.      Following my telephonic meet and confer conference with counsel for JPA, on July 3, 2008, I prepared and transmitted via email to counsel for JPA correspondence confirming Global Check's positions relative to JPA's CLRA and punitive damages claims, as well as detailing the lack of federal subject matter jurisdiction and the failure to state a claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.  A true and correct copy of that correspondence is attached hereto as Exhibit A.

5.      On July 11, 2008, I was advised by counsel for JPA in a further telephonic meet and confer conference that JPA would not amend its complaint unless and until Global Check files a motion to dismiss or otherwise responds to the Complaint.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed on July 25, 2008, in San Diego, California.

s/James S. McNeill
James S McNeill

# EXHIBIT A

# McKenna Long
# &Aldridge LLP
### Attorneys at Law

Albany
Atlanta
Brussels
Denver
Los Angeles

New York
Philadelphia
Sacramento
San Diego
San Francisco
Washington, D.C.

Suite 3300 • Symphony Towers • 750 B Street • San Diego, CA 92101
Tel: 619.595.5400 • Fax: 619.595.5450
www.mckennalong.com

JIM MCNEILL
(619) 595-5445

EMAIL ADDRESS
jmcneill@mckennalong.com

July 3, 2008

**VIA E-MAIL: rak@katriellaw.com**

Roy A. Katriel, Esq.
THE KATRIEL LAW FIRM, PLLC
1101 30th Street, NW, Suite 500
Washington, DC 20007

    **RE:    JPA Furniture, Inc., et al. v. Global Checks SVC.**
               **USDC (Southern District) Case No. 08 CV 0978 BEN BLM**

Dear Mr. Katriel:

    Thank you for taking a few moments today to discuss JPA Furniture's complaint against Global Check and our concerns with some aspects of it. As I indicated, I understand you are in the process of amending the complaint, and I wanted to raise these issues in advance of that amendment in an effort to avoid later motion practice.

    To confirm the points of our discussion, Global Check does not believe that JPA Furniture (1) has standing to bring a claim under the Consumer Legal Remedies Act ("CLRA" or the "Act"); (2) were it to have standing can amend the complaint to bring a damages claim under the CLRA without having provided notice under the Act in advance of filing; or (3) can allege punitive damages for its breach of contract claim.

    With respect to JPA Furniture's CLRA claim, only individual consumers have standing to bring a claim under the CLRA, which protects consumers, defined as "*an individual* who seeks or acquires, by purchase or lease any goods or services for *personal, family, or household purposes.*" Cal. Civ. Code § 1761(d) (emphasis added). *See Lazar v. Hertz Corp.* (1983) 143 Cal.App.3d 128, 142 (attorney who used rental cars for business and not consumer purposes could not be class representative in CLRA claim); *California Grocers Ass'n v. Bank of America* (1994) 22 Cal.App.4th 205, 217 (retail grocers association cannot bring CLRA claim); *Ting v. AT&T* (9th Cir. 2003) 319 F.3d 1126, 1148 ("CLRA does not apply to commercial or government contracts, ..."). We do not believe JPA Furniture has standing as a "consumer", nor that it can characterize its contract with Global Check as the purchase of services for "personal, family or household purposes." During our call, you explained that you have authority that supports JPA

Roy A. Katriel, Esq.
July 3, 2008
Page 2

Furniture's standing to bring a CLRA claim for a breach of contract. We would appreciate you providing that authority to us.

In addition, were JPA Furniture to have CLRA standing, which we of course dispute, we do not believe that—having already brought a complaint under the CLRA for injunctive relief—it can send a *post-complaint* CLRA notice and amend the complaint to further allege a claim for CLRA damages. The CLRA contains a strict requirement that defendants be given written notice at least 30 days before an action seeking damages is filed. Cal. Civ. Code § 1782(a); *Outboard Marine Corp. v. Sup. Ct.* (1975) 52 Cal.App.3d 30, 40-41; *Laster v. T-Mobile USA, Inc.* (S.D. Cal. 2005) 407 F. Supp. 2d 1181, 1195-96. You suggest that JPA Furniture can file an action for injunctive relief, then provide notice, and if no corrective action is taken, amend the complaint to allege a claim to CLRA damages as well. But the "clear intent of the act is to provide and facilitate **precomplaint** settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished. *This clear purpose may only be accomplished by a literal application of the notice provision.*" *Laster*, 407 F. Supp. 2d at 1196 (bold emphasis added; italics in original). *See also Von Grabe v. Sprint* (S.D.Cal. 2003) 312 F.Supp.2d 1285; *Outboard Marine*, 52 Cal.App.3d at 40-41. Accordingly, we believe JPA Furniture's failure to provide a *precomplaint* notice prohibits it from taking advantage of the CLRA's damages provisions. Please provide us with the support for amending to add damages that you referenced in our call.

We also discussed JPA Furniture's inclusion of a request for punitive damages as part of its breach of contract claim. *See* Complaint at ¶ 48. As I stated during our call, under California law, punitive damages are not available for breach of contract claims. Rather, "'punitive or exemplary damages, which are designed to punish and deter statutorily defined types of wrongful conduct, are available only in actions "for breach of an obligation *not* arising from contract." (Civ. Code § 3294, Subd. (a), italics added.) In absence of an independent tort, punitive damages may not be awarded for breach of contract "even where the defendant's conduct in breaching the contract was willful, fraudulent, or malicious."'" *Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 61, quoting *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 6 Cal.4th 503, 516. *See also, City of Hope Nat'l Med. Ctr. v. Genentech, Inc.* (2008) 43 Cal.4th 375, 392 ("punitive damages may not be awarded for breach of contract"). Based on our discussion, you agreed to review this allegation prior to amending the complaint.

In addition to these concerns, JPA Furniture's Unfair Competition Claim under California Business & Professions Code § 17200 (the "UCL") is premised on actions also alleged in support of the breach of contract claim, and common law breach of contract cannot serve as a predicate act for purposes of a UCL claim. Also, we do not believe your complaint alleges a basis for federal jurisdiction: (1) there is no federal claim alleged; (2) the amount in controversy between JPA Furniture and Global Check is not alleged to exceed $75,000; and (3) there is no allegation of combined damages of $5,000,000 to maintain federal jurisdiction under the Class Action Fairness Act.

Roy A. Katriel, Esq.
July 3, 2008
Page 3

With respect to the UCL claim, JPA Furniture's complaint alleges this claim is based the change in the fees structure that also supports its claim for breach of contract, i.e., the breach of contract is the predicate act for the UCL claim. But a § 17200 claim cannot be founded on common law principles. *Bardin v. Daimlerchrysler Corp.* (2006) 136 Cal.App.4th 1255, 1272 ("reliance on general common law principles to support a cause of action for unfair competition is unavailing"). Thus, a breach of contract claim cannot be the basis for a §17200 claim. *Accuimage Diagnostics Corp v. Terarecon, Inc.* (N.D.Cal. 2003) 260 F.Supp.2d 941, 954 . Consequently, the Complaint fails to allege a § 17200 claim for unlawful business practices.

Likewise, the Complaint also fails to allege a § 17200 claim under the "unfair" prong. The "unfair" prong encompasses conduct that "threatens an incipient violation of *antitrust law*, or violates the policy or spirit of one of those laws or otherwise *significantly threatens or harms competition.*" *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal.4th 163, 187 (emphasis added). The Complaint fails to allege any threat to competition or a violation of antitrust law.

The "fraudulent" or "deceptive" prong is also unavailing. A business practice is "fraudulent" within the meaning of §17200 if "members of the public are likely to be deceived." *Comm. on Children's Tel. v. Gen. Foods Corp.* (1983) 35 Cal.3d 197, 211. None of JPA Furniture's allegations pertain to any statements or advertising by Global Check to any *consumer*. Nor is there any allegation that any Global Check statement or advertising was likely to deceive a reasonable consumer. Furthermore business entities like JPA Furniture are not "members of the public," and it is the public in general has to be harmed by the alleged fraudulent business practice. *Rosenbluth Int'l. Inc. v. Sup. Crt.* (2002) 101 Cal.App.4th 1073, 1075. Therefore this prong of the statute is not applicable to the claims made. Furthermore, as a business entity, as with the CLRA claim, JPA Furniture does not even have standing to assert a § 17200 claim under the "fraudulent" prong.

Accordingly, we do not believe JPA has or can state a claim against Global Check under the UCL.

Finally, we fail to find any basis in your complaint for invoking federal jurisdiction. There is no federal claim alleged. And while JPA Furniture and Global Check are alleged to have diversity of citizenship, JPA cannot allege that the amount in controversy exceeds the $75,000 amount required to invoke federal diversity jurisdiction. In fact, the complaint fails to make *any* allegation regarding the amount in controversy. But even so, the *total* amount of additional fees charged JPA Furniture since the inception of the challenged rate increase (i.e., the difference between the old rate JPA Furniture accepted and that it challenges) is approximately $230 gross, if not offset by the claims Global Check paid under the *new* rate plan that would *not* have been paid under the old rate plan (approximately $356 in claims were paid under the new classification protocols that *would not have been paid under the prior plan*).

Roy A. Katriel, Esq.
July 3, 2008
Page 4

We do recognize that JPA Furniture's Complaint invokes the Class Action Fairness Act ("CAFA"), but it makes no allegation regarding the amount in controversy or other CAFA requirements being met. While we understand some courts to recognize that the individual $75,000 amount in controversy requirement may be met by one named plaintiff, we do not believe any class member can claim such damages. Regardless, by our calculations, JPA Furniture can in no way legitimately allege an amount in controversy approaching the overarching $5,000,000 requirement for CAFA jurisdiction. Thus, we do not believe JPA Furniture can invoke federal jurisdiction.

Obviously, we have a number of concerns with JPA Furniture's Complaint, and we hope while you may dispute some or all of the issues we raise, you will at least agree that our concerns are legitimate. Still, as I mentioned during our call, your client is the only client with whom Global Check has not been able to reach a quick accommodation to resolve their concerns in the months following the plan changes. While your client did call Global Check about cancellation of the account shortly after the plan change, the letter requesting cancellation was not received by Global Check prior to service of the Complaint. Since receiving it, the account has been cancelled, with no further charges to your client. Assuming your client wishes to maintain its account as cancelled, we believe it makes sense for both parties to attempt to reach a resolution of JPA Furniture's issues and put this matter to rest. To that end, we understand you will be conferring with your client on the potential for settlement without further pleading and motion practice. Thus, we will await your response, and we are also open to further discussion of the points we raise above.

Sincerely,

McKENNA LONG & ALDRIDGE LLP

Jim McNeill

JSM:lw

cc:     Michael D. Braun, Esq. (via e-mail)

**JPA FURNITURE INC. V. GLOBAL CHECK SVC.**
**United States District Court Case No. 08-CV-0978 BEN (BLM)**

### CERTIFICATE OF SERVICE

I, James S. McNeill, certify that I caused to be served upon the following counsel and parties of record a copy of the following document(s):

- **DEFENDANT GLOBAL CHECK SERVICES' NOTICE OF MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(B)(1) AND 12(B)(6) AND MOTION TO STRIKE PUNITIVE DAMAGES [Fed.R.Civ.Proc. 12(b)(1), 12(b)(6) & 12(f)]**

- **DEFENDANT GLOBAL CHECK SERVICES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED.R.CIV.PROC. 12(B)(1) AND 12(B)(6) AND MOTION TO STRIKE PUNITIVE DAMAGES PURSUANT TO FED.R.CIV.P. 12(F)**

- **DECLARATION OF DAVID HOMOKI IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED.R.CIV.P.. 12(B)(1) AND 12(B)(6) AND MOTION TO STRIKE PUNITIVE DAMAGES PURSUANT TO FED.R.CIV.P. 12(F)**

- **DECLARATION OF JAMES S. MCNEILL IN SUPPORT OF DEFENDANT GLOBAL CHECK SERVICES' MOTION TO DISMISS PURSUANT TO FED.R.CIV.PROC. 12(B)(1) AND 12(B)(6) AND MOTION TO STRIKE PUNITIVE DAMAGES PURSUANT TO FED.R.CIV.P. 12(F)**

as indicated/listed on the United States District Court, Southern District of California's CM/ECF registered email list in the above-referenced matter.

Michael D. Braun, Esq.                          *Attorneys for Plaintiff*
BRAUN LAW GROUP, P.C.
12400 Wilshire Blvd., Suite 920
Los Angeles, CA 90025
Tel.:  (310) 442-7755/**Fax: (310) 442-7756**
E-mail:  service@braunlawgroup.com

via personal service, overnight mail (VIA UPS Overnight), facsimile, first class mail or e-mail, as indicated below:

Roy A. Katriel, Esq.                            *Attorneys for Plaintiff*
THE KATRIEL LAW FIRM, PLLC
1101 30TH Street, NW, Suite 500
Washington, DC 20007
Tel.:  (202) 625-4342/**Fax: (202) 330-5593**
E-mail:  rak@katriellaw.com

**Via U.S. Mail**

08CV0978

1

Executed on **July 25, 2008,** in San Diego, California.

2

3

4

                                    s/James S. McNeill
                                          James S. McNeill

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28